No. 31472.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MELVIN HODSON, Plaintiff in Error.

*Opinion filed May 18, 1950—Rehearing denied September 18, 1950.*

ARTHUR F. MELVIN, of Marion, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and LYLE R. WHEELER, State's Attorney, of Havana, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Plaintiff in error, Melvin Hodson, was indicted and tried jointly with Merle Prohaska and Thomas Skelly for the crime of murder. After a jury trial in the circuit court of Mason County, all three defendants were found guilty of murder and sentenced June 28, 1947, to life imprisonment in the penitentiary. Hodson brings this writ of error to review the record of his conviction.

April 6, 1947, at about 2:30 o'clock in the morning, a night policeman for the city of Havana, came upon two men struggling on the pavement near a tavern. One of the men raised up and fired two shots into the body of the man who was down. The man who fired the shots ran to a nearby automobile which drove away at high speed after three shots had been fired through the window at the night

policeman. The man who was shot, John Barclay, died later in the day. About 1:30 in the afternoon of the same day an abandoned 1939 Plymouth sedan was found by a State policeman about three miles west of the city of Springfield. The car was promptly identified as belonging to plaintiff in error, and he was arrested about an hour later in the city of Kankakee, where he had gone the previous day. Fingerprints taken from inside of the car, the following day, were identified as belonging to the other two defendants, Merle Prohaska and Thomas Skelly. Prohaska was immediately arrested in Pekin, while Thomas Skelly was not arrested until about ten days later in Peoria.

April 17, 1947, Prohaska signed a confession in the sheriff's office at Havana, in which he recited that he was employed by plaintiff in error, and that on April 4, 1947, he and plaintiff in error drove to Canton in the 1939 Plymouth sedan belonging to plaintiff in error, and called upon a gun dealer there for the purpose of buying some 32-calibre ammunition; that the dealer had no ammunition of that calibre; that plaintiff in error on that occasion purchased a 32-calibre automatic pistol from Prohaska for $45, and put it in his front pocket; that on the way back to Peoria plaintiff in error asked Prohaska if he knew where John Barclay was and said that he had already given a couple of fellows some money to knock off Barclay.

The confession further stated that on the next day Prohaska was driving Hodson's Plymouth sedan in Peoria when he saw Thomas Skelly on the street and stopped and let him into the car; that Skelly asked him about the whereabouts of John Barclay and said that plaintiff in error, Hodson, had hired him to kill Barclay; that Prohaska and Skelly then drove to Ellisville and made inquiry for Barclay; that from there they drove to Canton and made further inquiry regarding Barclay, and finally drove down to Havana where they found Barclay in a tavern on Main Street; that Prohaska and Skelly entered the place

and Skelly indicated that he was going to kill Barclay right there; that Prohaska walked back outside and Skelly followed him; that in a few moments Barclay came out, and Barclay and Skelly got into a scuffle and that Prohaska heard two or three shots fired and saw Skelly run back to the car and try to get in; that Skelly fired three shots through the left door of the Plymouth sedan directed at the man who was approaching the car on foot; that Prohaska started the car and left the vicinity at a high rate of speed; that Skelly fell out as the car got underway; that Prohaska became confused in his directions and got on the Springfield road and continued in that direction until the car quit on him near the outskirts of Springfield; that at Springfield he took a bus back to Peoria where he arrived about 10:45 in the morning of April 6; that the 32-automatic used by Skelly in shooting Barclay was the same gun which Prohaska had on the day before sold to plaintiff in error.

On the day following Prohaska's first confession, Thomas Skelly executed a confession in which he recited that he had telephoned Prohaska on April 4 and tried to borrow some money from him; that Prohaska later came to his house with plaintiff in error, who told Skelly that he would pay him $500 if he would keep Barclay from appearing against him; that the next day Prohaska and Skelly left Peoria for Ellisville in search of Barclay and went from there to Canton and from Canton to Havana before they discovered him in a restaurant where Prohaska spoke to Barclay; that they then went outside and waited for Barclay to leave; that about a half hour later Barclay came out and Skelly followed him around the corner and asked him to come over to the car; that as they approached the car Barclay spun around and hit Skelly in the mouth with a pistol and that they fell to the ground as they struggled and Skelly took out his pistol and fired it twice into Barclay's body; that Skelly then ran to the

car which started up and threw him off; that Skelly then picked up a ride which took him back to Peoria; that if Barclay had not pulled a gun, Skelly would not have killed him.

Later the same day Skelly made another written confession, in substantially the same form as the one made previously, which was also signed by Prohaska. In still another written statement made the same day, also signed by Prohaska, Skelly stated that plaintiff in error told him on the evening of April 4 that Prohaska would pick him up in a car Saturday morning and go with him to look for Barclay; that he would leave a gun in the glove compartment in the car for Skelly's use; that Saturday morning when Prohaska called for him in the car of plaintiff in error he found a 32-calibre automatic pistol in the glove compartment and used that gun in shooting Barclay; that plaintiff in error had told him that he had purchased the gun from Prohaska on the evening of April 4.

After the last two statements had been made by Skelly, and signed also by Prohaska, plaintiff in error was brought over to the sheriff's office from the county jail and these two confessions, as signed by his two codefendants, were read aloud in Hodson's presence. At that time, in response to questions put to them by the officers present, Prohaska and Skelly each said that the statements contained in the confessions were true. The State's Attorney then asked plaintiff in error what he thought about the confessions of Prohaska and Skelly, and plaintiff in error made no reply except that he shrugged his shoulders.

All of the confessions made by his two codefendants were admitted in evidence over the objection of plaintiff in error, Hodson. The first written confession made by Merle Prohaska, on April 17, in the sheriff's office at Havana, as read to the jury, had Hodson's name deleted from it, and inserted in place of his name was the letter "A." The court instructed the jury to disregard this confession as to

the defendants, Skelly and Hodson. In the first written confession signed by Thomas Skelly, as read to the jury, the name Hodson was deleted and the letter "X" inserted in place of his name. This confession was admitted in evidence as to both Skelly and Prohaska, who had signed it, but not as to Hodson.

The two supplemental confessions made by Thomas Skelly on April 18, both of which were also signed by Prohaska, contained the name of Hodson without deletion and were both admitted. All four of the confessions contained language specifically charging Hodson with employing Prohaska and Skelly to kill Barclay. The court instructed the jury that the two later written confessions of Prohaska and Skelly, which were read aloud in Hodson's presence, were not to be considered by the jury in determining the guilt or innocence of plaintiff in error, Hodson, except in connection with his conduct or words spoken, if any, at the time such confessions were read aloud, in his presence, and then only in connection with all the other facts and circumstances admitted in evidence bearing upon the guilt or innocence of plaintiff in error.

Error is assigned on the refusal of the court to delete from the first confessions of Prohaska and Skelly, which were admitted in evidence only as to those two defendants, all reference to plaintiff in error, Hodson. In each of these confessions, as read to the jury, a letter of the alphabet had been substituted wherever the name Hodson appeared. These confessions contained references to the address where Hodson lived, the ownership by Hodson of the Plymouth car which Prohaska was driving at the time Barclay was found and killed, Hodson's ownership of the pistol which killed Barclay, and a recital that Hodson had hired Prohaska and Skelly to kill Barclay. The mere substitution of a letter of the alphabet in place of plaintiff in error's name, under the circumstances, particularly where two other confessions containing his name and containing

substantially the same statements concerning his connection with the crime, were admitted in evidence, could not have deceived anyone as to the identity of the person mentioned in the confessions of Hodson's codefendants.

It is the law of this State that the voluntary confession of one person made after the commission of the crime cannot be admitted against a codefendant unless made in the presence of the codefendant and assented to by him. (*People* v. *Buckminster,* 274 Ill. 435; *People* v. *Patris,* 360 Ill. 596.) In the *Buckminster case* we also held that if that part of the confession pertaining to the guilt of a codefendant can be properly left out without in any way weakening the confession as to the one who made it, then the court should not admit in evidence that part of the confession which implicates the codefendant.

The first four paragraphs of Prohaska's first confession had to do with facts which were preliminary to the actual killing of Barclay and contained repeated references to plaintiff in error's connection with a plan to commit the murder. The remainder of Prohaska's first confession contained a recitation of the facts concerning the actual killing of Barclay, without any reference to plaintiff in error, with the exception of one short paragraph in which the ownership of the 32-calibre automatic pistol was attributed to Hodson.

All reference to plaintiff in error could have been deleted from the statement without in any way weakening Prohaska's confession concerning his own participation in the crime. The deletion of two short paragraphs in the first part of Skelly's first confession would have removed all reference to plaintiff in error, without weakening the effect of Skelly's confession of his part in the killing of Barclay. It seems clear, therefore, that the case against Prohaska and Skelly, who were being tried jointly with plaintiff in error, would not have been weakened by the deletion from their written confessions of any reference to plaintiff in

error or to his participation in the crime. It is practically impossible for the average juror to divest his mind of such testimony, even after being instructed by the court that such confessions are to be considered only as to the defendant, or defendants, who made them. (*People* v. *Bolton,* 339 Ill. 225.) Before the confessions of Prohaska and Skelly were submitted for the consideration of the jury the court should have removed from such confessions all recitals which referred directly to plaintiff in error. *People* v. *Durand,* 321 Ill. 526.

The last two written confessions made by Skelly, and signed by Prohaska, were admitted in evidence on the theory that Hodson had, by his silence when the confessions were read aloud in his presence, made an admission against interest as to the truth of the statements of his codefendants. The admission in evidence of these confessions is likewise assigned as error. The confessions of his codefendants related in detail that Hodson had employed Prohaska and Skelly to kill Barclay and had furnished the car and gun with which the act was to be accomplished. At the trial both Prohaska and Skelly repudiated their previous statements, insofar as they related to Hodson, and testified that Hodson had nothing to do with the killing of Barclay, and that he did not own or furnish the gun with which Barclay was killed. Hodson denied any knowledge concerning the crime, he was not present at or near the scene of the killing, and there was no testimony of any witness which tended to connect him with the murder of Barclay.

In the case of *People* v. *Nitti,* 312 Ill. 73, we held that in order to attach much significance to the failure to reply to the accusing statement, it ought to appear that the silence is affirmative,—that is, that the accused has heard the statement implicating him and has voluntarily refused to challenge the statement. When the State's Attorney in this case asked plaintiff in error what he thought about the

confessions of Skelly and Prohaska, which had just been read to him, plaintiff in error not only refused to reply but also shrugged his shoulders.

The witness Abernathie, who was an investigator for the State of Illinois, was present when the confessions were read. He testified that he had talked to Hodson for about an hour on April 16 and that Hodson had refused to make a statement and had stated that he had employed counsel who would speak for him. This tends to corroborate Hodson's testimony that he had refused to make any reply to the State's Attorney, when the statements of the other two defendants were read in his presence, because he had been advised by his counsel not to talk. Furthermore, the sheriff of Mason County testified that when he went to the jail to get Hodson, for the purpose of bringing him to the sheriff's office in order to confront him with the written confessions of the two other defendants, Hodson had refused to come with him until he was told that he would be taken by force, if necessary. Hodson's silence, and the shrugging of his shoulders, in reply to the State's Attorney's question, take on a different meaning in the light of this testimony. His presence at the reading of the confessions of his co-defendants was the direct result of compulsion on the part of the sheriff, for the specific purpose of observing plaintiff in error's reaction to such confessions, after he had consulted with counsel and had previously advised the officers he would not talk.

Where statements are made in the presence of the accused under circumstances showing that his silence is of a character which does not justify the inference that he should have spoken, or if he is restrained in any way from speaking by fear, doubt of his rights, instruction by his attorney, or reasonable belief that his security would be best promoted by silence, his silence does not amount to an admission of the truth of the statements made and such statements are not admissible as against the accused.

(*People* v. *Blumenfeld*, 330 Ill. 474; *People* v. *Hanley*, 317 Ill. 39.) Such statements are not admissible where, by his conduct, the accused person shows clearly that he does not acquiesce in the statements. *People* v. *Harrison*, 261 Ill. 517.

In this case the testimony of the sheriff corroborates the testimony of the plaintiff in error that he had refused to go voluntarily to the sheriff's office on the occasion when the confessions of his codefendants were read to him. It further appears that the officers knew that he had advised with an attorney at the jail, and that he had previously refused to make a statement after declaring that his attorney would speak for him. A reasonable inference from plaintiff in error's conduct under these circumstances would be that he refrained from speaking, not only on account of instruction by his attorney, but also because of a well-founded belief that his rights would be best preserved by remaining silent while being questioned by the officers.

This court has repeatedly pointed out that the constitutions of the United States and of the State of Illinois guarantee to every person accused of crime the privilege of remaining silent. (*People* v. *Nitti*, 312 Ill. 73; *People* v. *Blumenfeld*, 330 Ill. 474; *People* v. *Kozlowski*, 368 Ill. 124.) We have also pointed out that if proof of silence under accusation is, of itself, sufficient to justify a conviction of crime, then the provision of the Criminal Code, which denies to the prosecution the right to comment on the fact that a defendant has not testified, is not based on reason.

In the *Nitti case*, at page 92, we said: "Since the demeanor of a person upon hearing himself charged with crime is liable to great misconstruction, evidence of this description ought to be regarded with care. In discussing this question courts often say that silence, under the circumstances, may be construed as an admission or a confession. Because of this loose phraseology confusion has

arisen, and the circumstances arising from the conduct of the accused in remaining silent is often treated as though it were a confession. This is clearly an erroneous view. A confession is a direct acknowledgment of guilt on the part of the accused, either by a statement of the details of the crime or an admission of the ultimate fact. By the very force of the definition of a confession an admission is excluded. An admission, as applied in criminal law, is a statement by the accused of a fact, or facts, pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt. Of itself, an admission is never sufficient to authorize a conviction. The principle of confessions has no application to admissions. Under the law the court may instruct the jury as to the conclusive character of a confession, but as to an admission the instruction must be as to its weight as a circumstance, with other proof. So, silence under an accusation of crime may constitute conduct or circumstance from which guilt may be inferred, but such silence can never have the legal effect of a confession of a crime."

In the case now under consideration, where there was no other evidence connecting plaintiff in error with a plan to kill Barclay, or otherwise showing his participation in the crime, the admission in evidence of the confessions of his codefendants, together with evidence of his failure to reply when confronted with the statements therein contained, could very well have misled the jury to believe that by his silence plaintiff in error had confessed to taking part in the crime, as set forth in the confessions of his codefendants. The silence of plaintiff in error, under the facts and circumstances shown by the evidence, did not amount to an admission of the truth of the statements made in the confessions of his codefendants. The admission of such confessions, and evidence of his conduct concerning them, was prejudicial to the right of plaintiff in error to have a fair trial.

The evidence is conclusive that, in the presence of Merle Prohaska, Thomas Skelly killed John Barclay by shooting him with a 32-calibre pistol. When the confessions of Prohaska and Skelly are removed from consideration there is no direct evidence in the record connecting plaintiff in error with the shooting of Barclay by Skelly. At the trial both Prohaska and Skelly testified that Hodson had nothing at all to do with the killing of Barclay and retracted the statements which they had previously made to the contrary. Skelly claimed ownership of the pistol with which the killing was done. Hodson denied that he had any knowledge of the crime. He testified that he went to Kankakee, on business, the morning of the day before Barclay was killed, and remained there until he was arrested the afternoon of the next day. This is not disputed and the evidence shows that plaintiff in error was arrested in Kankakee soon after the Plymouth automobile belonging to him was found abandoned near the city of Springfield. At that time he told the officers that the morning he went to Kankakee his sister, Henrietta Hodson, had driven him to his garage, along with Prohaska, and he had left the Plymouth car in her possession. His sister was arrested and then released after remaining in custody a short time.

The evidence further shows that Prohaska was employed by plaintiff in error, at his garage, kept company with his sister, Henrietta, and lived in the house occupied by plaintiff in error, his son, his mother, and his sister. The opportunities for Prohaska to gain possession of the Plymouth automobile without the knowledge or consent of plaintiff in error, during his absence, are manifest. No strong inference of guilt on the part of plaintiff in error could be drawn from the fact, alone, that Prohaska was driving his car at the time the crime was committed.

Error was also assigned on the giving of instructions. Among the instructions cited as erroneous was one on the subject of conspiracy. The only evidence in the record

which would justify an inference that plaintiff in error had conspired with anyone, or entered into a concerted plan which led to the killing of Barclay, arises out of the four confessions signed by his two codefendants, Prohaska and Skelly. This instruction, nevertheless, told the jury: "If you believe from the evidence in this case beyond reasonable doubt that the defendants Melvin Hodson and Merle Prohaska, or either of them conspired together and with Thomas Skelly to commit an assault with intent to intimidate John Barclay and if you believe from the evidence beyond reasonable doubt that in the pursuance of such conspiracy or in the furtherance of the common object a shot was fired by Melvin Hodson, Thomas Skelly or Merle Prohaska, or any of them, and that John Barclay was thereby killed, then such of the defendants as the jury believe from the evidence beyond reasonable doubt to have been parties to such conspiracy are guilty of the crime of murder whether present or not at the killing and regardless of whether the identity of the person firing the shot be established or whether any of such parties to such conspiracy had a specific intent to kill the deceased."

To justify the conclusion that a conspiracy existed, there must be evidence of some agreement or some joint action toward accomplishing the object of the conspiracy. (*People* v. *Holtz*, 294 Ill. 143.) The only evidence of any such plan or conspiracy appears in the four confessions of the codefendants of plaintiff in error. These confessions were not admissible to determine the guilt or innocence of plaintiff in error. The giving of such an instruction was reversible error insofar as it applied to plaintiff in error. *People* v. *Damico*, 309 Ill. 577.

For the errors considered, the judgment is reversed and the cause is remanded for a new trial as to plaintiff in error.

*Reversed and remanded.*

Mr. JUSTICE CRAMPTON, specially concurring: I agree with the result but not with all that is said in the opinion.