(No. 61678

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROLANDO CRUZ, Appellant.

*Opinion filed January 19, 1988.—Rehearing denied April 5, 1988.*

322

CUNNINGHAM, J., took no part.

Daniel D. Yuhas, Deputy Defender, and Timothy M. Gabrielsen and John J. Hanlon, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Mark L. Rotert and Scott Graham, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

An indictment returned in the circuit court of Du Page County charged Rolando Cruz (defendant), Alejandro Hernandez, and Steven Buckley with the murder of 10-year-old Jeanine Nicarico (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)), rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1(a)), deviate sexual assault (Ill. Rev. Stat. 1981, ch. 38, par. 11—3(a)), aggravated indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4.1(a)), aggravated kidnapping (Ill. Rev. Stat. 1981, ch. 38, pars. 10—2(a)(2), (a)(3)), home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(2)) (nol-prossed on the People's motion), and residential burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—3(a)). The circuit court denied defendant's pretrial motions for severance, for separate juries, and for change of venue, as well as his motion to draw the jury panel from another county. After a lengthy trial, the jury returned verdicts of guilty against defendant and codefendant Hernandez on each of the offenses charged, but was unable to arrive at a verdict for codefendant Buckley. Defendant's sentencing hearing

was severed from that of his codefendants, and the cause proceeded to a bench hearing (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(d)(3)). The trial court found that there existed a statutory aggravating factor (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(7)), and that there were no mitigating factors sufficient to preclude a sentence of death. Defendant was sentenced to death, and his sentence was stayed (107 Ill. 2d R. 609(a)) pending appeal to this court (Ill. Const. 1970, art. VI, §4(b); 107 Ill. 2d R. 603). Codefendant Hernandez was also sentenced to death. On his separate appeal to this court, Hernandez' conviction was reversed for reasons similar to these which compel the reversal in this appeal of Cruz' conviction. See *People v. Hernandez* (1988), 121 Ill. 2d 293.

Evidence presented at trial indicated that on February 25, 1983, sometime between 1 p.m. and 3 p.m., some person or persons broke in the front door of the Nicarico home and later dragged Jeanine out of the house. Two days later, Jeanine's body was discovered in a wooded area on the Illinois Prairie Path near Eola Road, south of Illinois Route 5 in Naperville. The coroner determined that Jeanine's assailants had assaulted her anally and that several severe blows to the head caused her death. Examination of stomach contents showed that she died shortly after her abduction.

On March 14, 1983, detectives from the Du Page County sheriff's department questioned codefendant Hernandez, acting on an anonymous tip that he might have information concerning the murder. Hernandez then told police that he and codefendant Buckley heard a third individual named "Ricky" say he had killed the little girl. On April 17, 1983, sheriff's detectives spoke with Arthur Burell, an acquaintance of Cruz and Hernandez. Two days later they spoke with Cruz, who stated he knew Hernandez. On May 9, 1983, defendant requested a meeting with the detectives; on the way to

the sheriff's department offices, Cruz allegedly told them of a "vision" that he had had earlier that day, in which he saw that the victim had been dragged from her house and dumped near a field, and hit in the back of the head so hard that it left an impression in the mud where she lay. He also told detectives that she had been sexually violated anally. Detective Vosburgh of the Du Page County sheriff's department testified that he offered to show defendant a picture of the crime scene to determine if it coincided with his "vision," but defendant became emotionally upset and started to cry. On March 9, 1984, on the basis of these and other statements to various witnesses, defendant was arrested and charged with murder.

On appeal, the defendant's principal contention of error is that the circuit court failed to sever the trials of these codefendants. Cruz contends he was denied the right to confront witnesses against him guaranteed by the sixth amendment of the United States Constitution as interpreted by the Supreme Court in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. *Bruton* stands for the proposition that confrontation is denied when out-of-court statements made by a nontestifying codefendant are used to inculpate another defendant. *Bruton* holds that prejudice from these explicit inculpations cannot be cured by instructions to the jury to consider the confession only against defendant A and disregard it against defendant B.

Cruz contends that statements made by Hernandez to various witnesses that he (Hernandez) had been involved in the crime with "friends" or "named individuals" directly implicated Cruz because the statements were inadequately redacted. (Redaction involves deleting, from out-of-court statements, references to defendants other than the declarant.) Cruz further argues that the witnesses' accounts of Hernandez' statements are contextu-

ally inculpating as well, where the prosecution presented evidence informing the jury that Hernandez and Cruz had been friends at the time of the crime. Defendant contends that the trial court was thoroughly apprised, prior to trial, of these statements by defendant and codefendant Hernandez, as well as the prosecution's intent to establish a friendship link, and that the trial court's failure to grant the motions for severance denied him a fair trial so that the protections of *Bruton v. United States* were rendered illusory.

The People respond that severance was not required because codefendant Hernandez' statements implicating Cruz were redacted to eliminate all references to defendant and the prosecution did not seek to use the contents of Hernandez' statements as evidence against Cruz. The People maintain that there was no substantial risk here that the jury, despite instructions to consider statements only against the declarant, Hernandez, would look to the incriminating out-of-court statements of Hernandez to determine the guilt of Cruz. The People assert that the prosecution's argument to the jury that the codefendants were friends was proper because the friendship was relevant to show that the crime was committed by more than one person and that these defendants acted in concert in performing the crime. Relying upon *People v. Morgan* (1986), 112 Ill. 2d 111, the People state that any potential error was cured when the trial court sustained a defense objection to this line of argument.

The principal evidence presented at trial against Cruz consisted of testimony by witnesses to statements made by Cruz and codefendant Hernandez; while Hernandez' statements admit an involvement in the crime, defendant himself admits only that he had talked to persons who kidnapped the victim. However, the statement he made to police concerning a "vision" he had about the crime did demonstrate a knowledge of facts surrounding the

victim's death which the police had not disclosed to the public during the investigation, facts presumably known only to someone who had participated in the crime. Defense counsel attempted to persuade the jury that defendant's knowledge was gained in the course of cooperation with police investigators and that defendant's statements were fabricated in his attempt to collect a piece of the sizeable reward offered for the conviction of the killer.

Prior to trial, all defendants filed numerous motions for severance, providing the trial court with some 41 of the statements in which they implicated one another, statements which the People indicated they intended to use at trial. On August 29, 1984, counsel for Cruz argued that the statements by codefendant Hernandez would implicate Cruz at trial. The trial court noted the potential *Bruton* problem but denied the severance motions. On December 27, 1984, Cruz and codefendant Buckley renewed their motions for severance, as counsel for Buckley cited specific examples of statements made by codefendant Hernandez that would imply the complicity of codefendants Cruz and Buckley. The circuit court again denied the defendant's motions for severance, at which point defense counsel requested that the court rule on proposed redactions, and the court ordered that opposing counsel should confer to resolve the redaction problem. On January 3, 1985, defendants once again filed a motion for severance, accompanied by a list of the statements in which defendants implicated each other, but the circuit court denied that motion as well.

Cruz complains that testimony by several witnesses improperly linked him to Hernandez' admissions. Lieutenant Robert Winkler, an officer at the Du Page County corrections center, where Cruz and codefendant Hernandez were held, testified that early in June 1984, codefendant Hernandez requested to speak with him.

Hernandez told him that in February 1983, he had planned a burglary in Naperville "with two other named individuals." He said that they had proceeded to the location but when it came time to carry out the crime, he, Hernandez, lost his nerve and told the "two other named individuals" that he did not want to go through with the burglary, at which point they dropped him off three blocks away. He stated that they returned a short while later to pick him up and when he entered the vehicle, he noticed a little girl, as well as other items that were fruits of the crime. They returned to Aurora, at which point the "two named individuals" dropped him off at his home and that was the last he saw of the little girl. Prior to trial, Winkler had identified as the "two named individuals" Cruz and codefendant Buckley.

Winkler also testified to a conversation between himself and Cruz that had occurred a week to 10 days earlier. Cruz had related that some "friends" had approached him one day in February of 1983 and asked him if he wanted to be involved in a burglary, but that he declined to participate. He stated that he did not allow them to use his car, but did show them how to hotwire a vehicle. Cruz said the "named individuals" approached him two days later and asked him if he wanted to have sex with the little girl, but he once again declined to participate, at which point the individuals left.

Deputy Sheriff James Roberson stated prior to trial that codefendant Hernandez had told him that Cruz and codefendant Buckley had abducted the little girl and brought her to him. At trial, Roberson testified that codefendant Hernandez told him that he and "some friends" went to the Nicarico home to burglarize it, and that they had taken the young girl from the home, to try to get money for her. Roberson testified that Hernandez told him that when he left the place where he had taken the girl, the girl was still alive.

Armindo Marquez testified that he was a friend of co-defendant Hernandez and that, while Marquez was incarcerated in the Kane County jail in March 1983, investigating officers arranged for him to meet with Hernandez, who told him that he had driven around the block and pulled into the driveway of the Naperville home, where he saw his "partner" pulling the little girl out of the house by her ankles. Marquez stated that Hernandez told him that the little girl was killed because she was making too much noise. Marquez' next testimony was that he had often seen Cruz and codefendant Hernandez together.

Jackie Estremara, codefendant Hernandez' cousin, testified that on October 8, 1983, Hernandez told him that "they" had gone to the house in Naperville intending to commit a burglary, and that they took the little girl with them when they left, because they did not want her to identify them to the police. Prior to trial, Estremara informed the police that Hernandez had told him that he and Cruz had killed the little girl after discovering her during the burglary.

Benigno Rodriquez testified that he was acquainted with Cruz and with codefendants Hernandez and Buckley. He further testified that he had seen defendant and codefendant Hernandez together two or three times a week for several years. Defense counsel objected to this testimony and moved for a mistrial, arguing that the testimony had absolutely no relevance to the case other than to link the codefendants' statements, but the motion was denied.

Claudino Montanez testified that he, too, was acquainted with both Cruz and codefendant Hernandez. He testified that he had seen all three defendants together several times a week during the summers of 1982 and 1983. Defense counsel registered an objection to this latter testimony, which objection was overruled.

In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the Supreme Court ruled that the admission in a joint trial of a statement by a nontestifying codefendant violated the defendant's constitutional right to confront witnesses against him, where that statement expressly named the defendant as an accomplice in the crime charged. The *Bruton* Court reasoned that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored" (391 U.S. at 135, 20 L. Ed. 2d at 485, 88 S. Ct. at 1627) and that the admission of a statement "expressly implicating" the defendant constituted such a context (391 U.S. at 124 n.1, 20 L. Ed. 2d at 478 n.1, 88 S. Ct. at 1621 n.1). Recently, in *Richardson v. Marsh* (1987), 481 U.S. 200, 95 L. Ed. 2d 176, 107 S. Ct. 1702, the Supreme Court addressed a type of *Bruton* problem involving contextual inculpation. In that case, the codefendant Williams' written confession had been redacted. Not only had the defendant Marsh's name been deleted, but also throughout the confession, any reference to her existence had been expunged. (481 U.S. at 203, 95 L. Ed. 2d at 183, 107 S. Ct. at 1705.) However, in the context of later testimony given by the defendant herself, and in the context of the prosecutor's closing argument, the confession in fact became incriminating to Marsh. There were numerous instructions by the trial judge to the jury that the confession was not to be considered against defendant Marsh.

Under these circumstances, the Supreme Court declined to extend the *Bruton* analysis to contextually inculpating statements. The Court noted that in situations like *Bruton* where the codefendant is explicitly named, there is an overwhelming probability that a jury would not be able to follow a limiting instruction. (*Richardson*,

481 U.S. at 207, 95 L. Ed. 2d at 186, 107 S. Ct. at 1707-08.) When, the Court stated, the jury has to link by inference the declarant's confession and other evidence to incriminate the defendant, it is far less likely that the jury will disregard the limiting instruction. (481 U.S. at 208, 95 L. Ed. 2d at 186, 107 S. Ct. at 1708.) In *Richardson*, the Court, referring to footnote 10 in *Bruton*, notes that redaction is one way to cure an explicitly incriminating confession. (481 U.S. at 208-09, 95 L. Ed. 2d at 186, 107 S. Ct. at 1708.) The Court, in *Richardson*, holds that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when *** the confession is redacted to eliminate not only the defendant's name, but any reference to her existence." (481 U.S. at 211, 95 L. Ed. 2d at 188, 107 S. Ct. at 1709.) We think it is noteworthy that *Bruton* footnote 10, to which the Court refers in *Richardson* (concerning redaction as a method by which the prosecution can still have the benefit of the confession), clearly disfavors attempts at redaction in oral testimony. *Bruton v. United States* (1968), 391 U.S. 123, 134 n.10, 20 L. Ed. 2d 476, 484 n.10, 88 S. Ct. 1620, 1626 n.10.

In this case we are not dealing with a carefully redacted written confession, we are dealing with out-of-court admissions made by defendants to third parties which inculpated other defendants. To date then, the Supreme Court has examined admission of a codefendant's confession which *explicitly* names the defendant (*Bruton*) and admission of one which contains *no reference* at all to a defendant (*Richardson*). We are currently presented with a situation falling someplace between those two end points of the spectrum and, parenthetically, in an area about which the *Richardson* opinion specifically expressed no opinion. *Richardson*, 481 U.S. at 211 n.5, 95 L. Ed. 2d at 188 n.5, 107 S. Ct. at 1709 n.5.

The *Bruton* decision, as well as decisions of this court, recognizes that there are circumstances under which the presumption that a jury can and will follow a trial court's instruction to disregard an incriminating inference generated by a confession or admission introduced against a codefendant must fall. (*Bruton v. United States* (1968), 391 U.S. 123, 135-36, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1627-28; *People v. Johnson* (1958), 13 Ill. 2d 619; *People v. Hodson* (1950), 406 Ill. 328; *People v. Buckminster* (1916), 274 Ill. 435.) In *Bruton*, as we have noted, this meant the presentation to the jury of a statement by a codefendant directly naming the defendant as an accomplice. In *Johnson*, the codefendant's confession was presented to the jury with the word "blank" substituted for the defendant's name (*People v. Johnson* (1958), 13 Ill. 2d 619, 623), and in *Hodson*, the codefendant's references to defendant as his accomplice were redacted by substituting a letter of the alphabet for the defendant's name (*People v. Hodson* (1950), 406 Ill. 328, 333-34). In each of these cases, it was held that a violation of defendant's right of confrontation occurred. It was reasoned that human experience informs us that the jury is aware of the name of the person to whom the codefendant refers and cannot be expected not to use that piece of evidence against the person who was so clearly identified in the statement.

Defendant argues that Hernandez' statements are both directly and contextually incriminating. In our opinion, although Hernandez' admissions are not directly inculpatory of defendant, in that they did not explicitly state to the jury that Rolando Cruz was his accomplice, the nature of these redactions in the context of the joint trial and the testimony linking Cruz with Hernandez rendered it impossible for the jury to conclude that the persons to whom Hernandez referred were anyone other than the two men seated next to him in the courtroom.

In *Richardson*, the Supreme Court rejected the theory of contextual inculpation because the confession by codefendant made no reference at all to the defendant and became incriminating only when coupled with the defendant's own testimony. In the case before us, the physical setting of the trial as well as the prosecution's introduction of acquaintanceship evidence formed an impermissibly incriminating context when they established the terms "friends" and "two named individuals" as thinly veiled references to Hernandez' codefendants. No "substantial inference" was required of the jury to identify defendant as one of the "friends" mentioned by witnesses to Hernandez' statements. (See *United States ex rel. Nelson v. Follette* (2d Cir. 1970), 430 F.2d 1055, 1059.) As a result, it would be unrealistic in the extreme to expect a jury to ignore the clear import of Hernandez' statements, despite their redaction.

Furthermore, any possibility that the jury would be able to follow the court's limiting instructions was removed when the prosecution encouraged the jurors to consider each codefendant's admission against the other defendants, implying that the defendants' friendship allowed them to do so. In his closing arguments, the prosecutor directly addressed the connections between the defendants' statements:

"MR. KNIGHT [Assistant State's Attorney]: *** If Buckley kicked the door in, all right. *What does that tell you about those admissions they've made? Not only are they friends—*

MR. JOHNSON [Counsel for defendant Buckley]: Objection, your Honor. I object to that as contrary to the law.

MR. LAZ [Counsel for defendant Cruz]: I join in that, Judge.

MR. JOHNSON: The last three statements.

THE COURT: So far, it's proper argument. May continue.

MR. KNIGHT: You've seen that they're friends. They live in the same neighborhood. They're all in the same proximity with respect to the victim's home. And I'm using it only in the direction of Cruz and Hernandez because the fact is they've made statements which are directed as admissions against them.

Okay. But they're also friends of Buckley's.

MR. JOHNSON: Objection, Judge. That inference is improper.

THE COURT: Confine—

MR. KNIGHT: This is only—

THE COURT: Confine it to the evidence now and relate it in that fashion.

MR. KNIGHT: This is only as to Cruz and Hernandez I'm talking about. Okay. *They're friends. They're neighbors. Therefore, when they make admissions that they've committed this crime, it's much more—*

MR. JOHNSON: Objection.

THE COURT: Objection sustained." (Emphasis added.)

Indeed, the Supreme Court in *Richardson* recognized the error which occurs when a prosecutor attempts to undo the effect of the limiting instruction by urging the jury to use a codefendant's statements in evaluating a defendant's case. (*Richardson v. Marsh* (1987), 481 U.S. 200, 211, 95 L. Ed. 2d 176, 188, 107 S. Ct. 1702, 1709.) In light of the prosecution's evidence relating solely to the friendship of the codefendants, in the testimony of Claudino Montanez and Benigno Rodriquez, as well as its attempts during closing argument to lead the jury to connect defendant with Hernandez' statements, we find a deliberate and constitutionally unacceptable attempt by the prosecution to circumvent the strictures of *Bruton* and the confrontation clause. See *People v. Clark* (1959), 17 Ill. 2d 486, 491.

Finally, buttressing our conclusion that defendant was denied a fair trial is the fact that the jury was informed by the prosecution, in the course of the examination of

the People's witnesses, that the statements of Hernandez testified to by that witness had been redacted. During the direct examination of witness Jackie Estremara, the prosecutor remarked, "I am going to ask you a series of questions about that conversation, but as I ask you those questions \*\*\* do not mention the name of any other person to whom he [Hernandez] referred." The People argue that this statement, far from prejudicing defendant, assisted his cause by precluding an inadvertent identification of defendant by the witness. Informing jurors that statements have been redacted can itself be grounds for a mistrial (*United States v. Danzey* (2d Cir. 1979), 594 F.2d 905, 918) and, in this case, put the jurors on notice that the testimony was being edited to protect someone involved in the trial, encouraging them to speculate as to the missing names.

Defendant argues that a severance should have been granted and that the denial of severance by the trial court was an abuse of the court's discretion. As noted in *Richardson*, anticipating the possibility of contextual inculpation presents practical problems for a trial court, when the court would be required to examine the evidence in advance to determine whether or not particular pieces of evidence, harmless individually, could be linked by the prosecution to effectively use one defendant's statement against another. (*Richardson v. Marsh* (1987), 481 U.S. 200, 209, 95 L. Ed. 2d 176, 187, 107 S. Ct. 1702, 1708.) In the case at bar, however, the prosecution's course was sufficiently clear in advance of trial, during argument on the defendants' motion to sever, as the People had indicated their intention to introduce statements detailing a friendship among the defendants. Given the People's heavy reliance upon the inculpatory statements of the codefendants, the likelihood of prejudice was predictable enough to require a severance. (See *People v. Daugherty* (1984), 102 Ill. 2d 533, 541.) While

the circuit court ordered the parties to cooperate in redacting the defendants' statements, it apparently never ruled on a final edit. The record reveals that it became increasingly clear in the course of the trial that the redactions were insufficient to safeguard defendant's rights. When the prosecution introduced the acquaintanceship testimony by Rodriquez and Montanez, following the testimony on Hernandez' admission, the prosecution's announced course was completed and the predicted prejudice realized.

We cannot conclude that the error in admission of the poorly redacted statements was harmless, as it would be impossible for this court to decide whether the prosecution's comments did or did not affect the verdict. (*Bruton v. United States* (1968), 391 U.S. 123, 136, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628; *People v. Knippenberg* (1977), 66 Ill. 2d 276, 287.) As noted earlier, none of defendant's statements admitted an involvement in the crime, although they did indicate knowledge of unpublished details about the crime, while Hernandez' statements consisted of clear admissions of participation in the burglary and presence at the time of the murder. The evidence against defendant was not overwhelming, and determining the outcome in the absence of the improper testimony is impossible. Therefore, since we cannot say beyond a reasonable doubt that the error did not affect the verdict (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 157), reversal and remand for a new trial is the proper remedy.

Despite this conclusion, we do not agree with defendant's contention that the evidence presented was insufficient to prove him guilty beyond a reasonable doubt, thus precluding his retrial. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 309.) Defendant argues that there must be some physical evidence in addition to his own admissions upon which to base a conviction. However, all that the

law requires is evidence, apart from the admission, that a crime occurred, and the fact of the murder is sufficient evidence in this case. (*People v. Willingham* (1982), 89 Ill. 2d 352, 358-59.) Defendant states that the admissions made by him in this case are so incredible that no proper inference of guilt may be drawn from them; we do not find them so incredible that we can say, as a matter of law, that they cast a reasonable doubt on defendant's guilt. Danny Fowler testified that defendant had told him he was present when the girl was killed. Ramon Mares testified that defendant had told him a similar story. Steven Ford testified that defendant told him that defendant had lived in woods near the Naperville-Aurora border, but something had happened which forced him to move out of there. While the testimony of these witnesses was suspect to some degree, any determination of their credibility must be left to the jury. (*People v. Locascio* (1985), 106 Ill. 2d 529, 537.) Finally, Detectives Vosburgh and Kurzawa testified to defendant's "vision" statement of May 9, 1983; while there may be other explanations for defendant's knowledge of details of the crime, their credibility is, once again, a matter for the jury. Defendant did not present an argument which convinces us that he learned the details of the crime contained in his "vision" from law enforcement officers, unlike the defendant in *People v. Linscott* (1985), 135 Ill. App. 3d 773. Nor is defendant's alibi so solid that it casts a reasonable doubt on the prosecution's case. (*People v. Thomas* (1955), 7 Ill. 2d 278, 282.) In sum, the evidence was neither so strong as to make the State's *Bruton* violations harmless error, nor so weak as to necessarily leave a reasonable doubt of defendant's guilt. *People v. Hernandez* (1988), 121 Ill. 2d 293; *People v. Collins* (1985), 106 Ill. 2d 237, 261.

Because statements by a codefendant presented by the prosecution improperly referred to defendant, and

the prosecution subsequently urged the jury to consider those statements against defendant, a violation of defendant's constitutional rights occurred; since the error cannot be considered harmless, the defendant's convictions must be reversed and his sentence vacated. The case is remanded to the circuit court of Du Page County for further proceedings.

*Reversed and remanded.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.