THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARTEZ COLBERT, Defendant-Appellant.

First District (3rd Division)   No. 1—89—0295

Opinion filed December 30, 1992.

Rita A. Fry, Public Defender, of Chicago (Joseph M. Gump and Robert Guch, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Michael Falagario, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Martez Colbert, was convicted of first degree murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) and conspiracy to commit murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—2, 9—1) in a jury trial. The trial court vacated the conspiracy conviction and sentenced defendant to 40 years' imprisonment. On appeal, defendant contends that (1) the trial court erred when it permitted the State to introduce evidence of extrajudicial statements made by a nontestifying codefendant; (2) the State failed to prove him guilty beyond a reasonable doubt; and (3) the trial court erred when it permitted the State to introduce prejudicial testimony involving other uncharged crimes. We reverse and remand for a new trial.

On October 29, 1987, Anthony Allen was fatally shot as he entered a liquor store located near the intersection of Bowen and Vincennes Avenues in Chicago, Illinois. Defendant and codefendant, Bradley Johnson, were arrested and charged by indictment with first degree murder and armed violence (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 33A—2). Defendant was further charged by indictment with conspiracy to commit murder. Codefendant confessed to killing Allen. Thereafter, he pled guilty to one count of first degree murder and was sentenced to natural life imprisonment. (See *People v. Johnson* (1st Dist. 1991), No. 1—89—2108 (unpublished order under Supreme Court Rule 23).) At defendant's trial, the trial court permitted the prosecutor to introduce evidence about inculpatory statements made by codefendant shortly after his arrest which implicated defendant in Allen's homicide. Defendant was subsequently convicted of first degree murder and conspiracy to commit murder. After vacating the conspiracy conviction, the trial court sentenced defendant to 40 years' imprisonment. This appeal followed.

■■ Defendant first contends that the trial court erred when it permitted the State to introduce evidence of extrajudicial statements made by a nontestifying codefendant. At trial, Chicago police detec-

tive Edward Griffin testified about statements made to him by code-fendant. In order to safeguard defendant's confrontation rights, De-tective Griffin redacted his testimony by substituting the word "friend" wherever codefendant mentioned defendant. The following colloquy occurred during the State's direct examination of Detective Griffin:

"[PROSECUTOR]: Please tell the ladies and gentlemen of the jury what you said to [codefendant] and what he said to you.

[DEFENSE COUNSEL]: Objection, judge.

[THE COURT]: Overrule the objection.

[GRIFFIN]: I told him that he had been identified as the man who had shot Anthony Allen on the corner of Vincennes and Bowen at approximately seven o'clock the evening before.

\*\*\*

He told me that he had been in the area of 91st and Com-mercial on the south side (of Chicago) when he was picked up by two friends in a yellow Chevy. They then started to drive to the area of 4300 South Calumet. As they drove, his friend who was driving the car said that Anthony Allen had to be killed, and that his friend wanted [codefendant] to do the killing.

[PROSECUTOR]: Did [codefendant] tell you if he said any-thing in response to that?

[GRIFFIN]: [Codefendant] said that he would do the killing. He said that his friend told him that he would give him enough money to buy a Cadillac if he would do this murder. [Codefend-ant] said that he wanted a nice Cadillac and nice things like his friend had.

[PROSECUTOR]: In addition to money sufficient to buy a Cadillac, was there anything else that this friend gave to [code-fendant]?

[GRIFFIN]: The friend who was driving the car told the friend who was in the front passenger seat to go into the glove compartment box, take out the gun that was in there and give it to [codefendant], who was seated in the back of the car. And he did that.

[PROSECUTOR]: Did he then tell you what vicinity in the city they went to after that was said and done?

[GRIFFIN]: They then drove to the area of 43rd and Cot-tage Grove, where the two friends dropped [codefendant] off out of the car. [Codefendant] said that he walked around, and before he had gotten out of the car, his friend who was driving

the car had given him an old big Durham hat to use to help disguise him.

[Codefendant] said he got out of the car. He walked around and he eventually walked up westbound on Bowen Avenue. He said he walked up to Anthony Allen and shot Anthony Allen in the head. When Anthony Allen fell to the ground, he fired again into his body as he was laying on the ground. After that, he turned and ran.

&#42;&#42;&#42;

Two friends then came up in the Chevy that he had driven down in. He thought they were going to give him a ride back out to 91st and Commercial. Instead, they gave him a twenty-dollar bill and he flagged down a taxicab. He got into the cab and took the cab back to 91st and Commercial. He waited there for a call from his friend to tell him about where he could get the money that was now owed to him for the murder."

Thereafter, codefendant's redacted confession was published to the jury as follows:

"On October 29th, 1987, [codefendant] got picked up in a car by two friends. [Codefendant] stated they drove to 43rd and Cottage Grove. On the way there, one of his friends gave [codefendant] a gun and described the man he was supposed to shoot. He was supposed to shoot [Anthony Allen] because [Allen] was a threat to [codefendant's] friends.

When [codefendant] got to 43rd Street, one of his friends pointed out who [Allen] was and said, 'Go get the gun. Go get the gun which [codefendant] had hidden in the bushes.' [Codefendant] got the gun and went up to [Allen] and shot him in the head two times. [Codefendant] was standing two to three feet away from [Allen] when he shot him. After [codefendant] shot [Allen], he threw the gun in the bush nearby and ran to his friend's apartment building. Then [codefendant] took a cab to the south side (of Chicago) and waited for a friend to call that he was supposed to give [codefendant] money for doing the shooting."

Defendant first argues that the trial court erred when it permitted the State to introduce evidence of codefendant's extrajudicial statements because there is insufficient indicia of reliability to rebut the presumption that the statements are unreliable. We disagree. Extrajudicial hearsay testimony may be admitted pursuant to the statement against penal interest exception to the hearsay rule where the declarant's statements are supported by sufficient indicia of reliability

to rebut the presumption that the statements are unreliable. (*Lee v. Illinois* (1986), 476 U.S. 530, 539, 90 L. Ed. 2d 514, 525, 106 S. Ct. 2056, 2061; *People v. Cruz* (Ill. Dec. 4, 1992), No. 70407, slip op. at 7.) We find that the State presented sufficient indicia of reliability here to rebut the presumptive unreliability of codefendant's statements. First, codefendant's inculpatory statements, in which he implicated himself as well as defendant in Allen's homicide, were made less than 24 hours after the murder. Moreover, these statements were substantially corroborated by other evidence adduced at trial. Andre Kinnebrew testified that defendant told him that "he was fixing to have [Allen] killed and [codefendant] was going to do it" moments before he witnessed codefendant shoot Allen twice in the head. Kinnebrew's testimony was substantiated by Reginald Winslow, who testified that he observed Kinnebrew's conversation with defendant. Winslow further testified that he saw defendant give codefendant money shortly before codefendant approached Allen and shot him twice in the head. The medical testimony established that Allen died from two bullet wounds he sustained to the head. Based on the proximity of codefendant's statements to investigating officers to Allen's murder, the close corroboration of other competent evidence presented at trial, as well as the inculpatory nature of codefendant's statements, we hold that the trial court did not err when it permitted the State to introduce evidence of codefendant's extrajudicial statements.

■ Defendant further argues that the State's use of codefendant's improperly and insufficiently redacted extrajudicial statements violated his right to confront and cross-examine witnesses against him as guaranteed by the United States and Illinois constitutions. (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8.) In *Bruton v. United States* (1968), 391 U.S. 123, 126, 20 L. Ed. 2d 476, 479, 88 S. Ct. 1620, 1622, the Supreme Court held that a defendant's Federal confrontation rights are violated when incriminating statements of a nontestifying codefendant are introduced at trial. The holding of *Bruton*, however, was derogated in *Richardson v. Marsh* (1987), 481 U.S. 200, 211, 95 L. Ed. 2d 176, 188, 107 S. Ct. 1702, 1709, where the Court held that the Federal confrontation clause is not violated by the use of a nontestifying codefendant's confession which has been redacted to eliminate any reference to defendant's existence. Independent of Federal constitutional doctrine, Illinois has long recognized that a defendant cannot be prejudiced by incriminating extrajudicial statements of nontestifying codefendants. *People v. Duncan* (1988), 124 Ill. 2d 400, 413-15, 530 N.E.2d 423, 429-40; *People v. Miller* (1968), 40 Ill. 2d 154, 158, 238 N.E.2d 407, 409; *People v. Clark*

(1959), 17 Ill. 2d 486, 490, 162 N.E.2d 413, 416; *People v. Johnson* (1958), 13 Ill. 2d 619, 623-24, 150 N.E.2d 597, 599; *People v. Skelly* (1951), 409 Ill. 613, 621, 100 N.E.2d 915, 919; *People v. Hodson* (1950), 406 Ill. 328, 334, 94 N.E.2d 166, 169; *People v. Barbaro* (1946), 395 Ill. 264, 270, 69 N.E.2d 692, 695; *People v. Patris* (1935), 360 Ill. 596, 601, 196 N.E. 806, 808; *People v. Buckminster* (1916), 274 Ill. 435, 444-45, 113 N.E. 713, 715-16.

Our supreme court recently addressed the issue here in *People v. Hernandez* (1988), 121 Ill. 2d 293, 521 N.E.2d 25, and its companion case, *People v. Cruz* (1988), 121 Ill. 2d 321, 521 N.E.2d 18. In *Hernandez* and *Cruz*, the defendants were jointly tried for the murder of a 10-year-old girl. At trial, several witnesses testified about extrajudicial statements made by the defendants implicating each other in the murder. The witnesses' testimony was redacted with the words "friends," "friends from Aurora" and "named individuals" to eliminate any reference to the nontestifying defendants. The court held that defendants' confrontation rights were violated because the nature of the redactions as well as the introduction of acquaintanceship evidence formed an impermissibly incriminating context which established that the terms "friends" and "two named individuals" were merely thinly veiled references to defendants. *Cruz*, 121 Ill. 2d at 331-32, 521 N.E.2d at 23; see also *Hernandez*, 121 Ill. 2d at 315-16, 521 N.E.2d at 37.

In the present case, Detective Griffin testified that codefendant told him that he was picked up and driven to the murder scene by "two friends in a yellow Chevy," and that "his friend who was driving the car said that Anthony Allen had to be killed." Moments before, however, Detective Griffin unexplainably stated that a yellow, seventies-model Chevrolet was registered to defendant. From this testimony, it would be impossible for the jury not to conclude that defendant was one of the "friends" referred to in codefendant's redacted statements. (See *Cruz*, 121 Ill. 2d at 331, 521 N.E.2d at 23.) We therefore hold that Detective Griffin's testimony about codefendant's extrajudicial statements, when considered in conjunction with the other evidence introduced at trial, creates impermissible incriminating implications of defendant's involvement in Allen's homicide in violation of defendant's confrontation rights. Because the evidence here is neither overwhelming nor uncontradicted, we cannot say that this constitutional violation did not contribute to defendant's conviction. (*Chapman v. California* (1967), 386 U.S. 18, 23, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 827; *People v. Fields* (1992), 226 Ill. App. 3d 345,

354-55, 589 N.E.2d 788, 795.) Accordingly, this error is not harmless beyond a reasonable doubt.

■ Defendant asserts that the competent evidence adduced at trial is insufficient to support his conviction, thus precluding his retrial. We disagree. The record here establishes that defendant was present at the scene of Allen's murder when the murder occurred, that he told a witness to the murder that "he was fixing to have [Allen] killed and [codefendant] was going to do it," and he was seen giving money to codefendant shortly before codefendant shot Allen twice in the head. After viewing the competent evidence here in a light most favorable to the prosecution, we find that a rational jury could have found defendant guilty of murder and conspiracy to commit murder beyond a reasonable doubt. Accordingly, the proper remedy in the present case is reversal and remand for a new trial.

■ Because the issue of the admissibility of collateral crimes evidence will likely arise on remand, we shall address defendant's final contention that the trial court erred when it permitted the State to introduce prejudicial testimony involving other uncharged crimes. At trial, Andre Kinnebrew testified that defendant directed a man named "Meatball" to fire several shots at him approximately one year earlier because a problem had developed between Kinnebrew and defendant. Kinnebrew was not injured in the alleged attack, which was not reported to police. In addition, Arnold Joyner testified that defendant gave him $1,500 and a .357 revolver to kill a man named Sherman Owens. Joyner acknowledged that he neither attempted to kill Owens nor returned the money or revolver to defendant. Over defense counsel's objections, the trial court admitted Kinnebrew's and Joyner's testimony involving uncharged criminal conduct to prove *modus operandi*.

It is well established that relevant evidence of a defendant's involvement in collateral crimes is admissible to establish *modus operandi*, motive, knowledge, intent, absence of mistake, state of mind, identification, common scheme or design, opportunity, or any other material question other than the propensity of the defendant to commit a crime. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484-85, 485 N.E.2d 1292, 1295-96.) In order for evidence of collateral crimes to be admitted to prove *modus operandi*, there must be a clear connection between the other crimes and the crime charged which creates a logical inference that if defendant committed one of the acts, he may have committed the other act. (*People v. Woltz* (1992), 228 Ill. App. 3d 670, 675, 592 N.E.2d 1182, 1186; *Kimbrough*, 138 Ill. App. 3d at 486, 485 N.E.2d at 1297.) Based on the almost identical

nature of the charges here with the criminal conduct alleged by Kinnebrew and Joyner, we find that the collateral crimes evidence introduced at trial shares sufficient distinctive common features with the charges in the present case so as to create a logical inference that there is a distinctive pattern of criminal behavior which would earmark the alleged offenses as the work of defendant. Furthermore, we cannot say that the probative value of Kinnebrew's and Joyner's testimony is outweighed by its prejudicial effect to defendant. We, therefore, conclude that the trial court properly admitted evidence of defendant's involvement in other uncharged crimes.

Accordingly, the judgment of conviction is reversed, and the case is remanded for a new trial consistent with what is stated herein.

Reversed and remanded.

GREIMAN, P.J., and CERDA, J., concur.