Reginald DEAN, Appellant,

v.

UNITED STATES, Appellee.

Terry D. TRICE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10469 and 10485.

District of Columbia Court of Appeals.

Argued April 21, 1977.

Decided Aug. 29, 1977.

Thomas W. Farquhar, Washington, D. C., appointed by this court, for appellant Dean.

Robert A. Beizer, Washington, D. C., appointed by this court, with whom Robert K. Huffman, Washington, D. C., was on the brief, for appellant Trice.

Robert I. Richter, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and William J. Hardy, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

KELLY, Associate Judge:

Appellants Trice and Dean appeal their respective convictions for first-degree murder and accessory after the fact to first-degree murder, urging for our consideration four assignments of error. Trice complains of the trial court's failure to give an immediate cautionary instruction concerning statements admissible only against Dean, and of its refusal to give a requested instruction on manslaughter as a lesser included offense of murder. Dean argues in addition that the trial court erred in denying his mid-trial motion for severance and in not requiring the government to elect between the aider and abettor and accessory after the fact counts of the indictment.

## I

Two government eyewitnesses testified that early on the morning of July 6, 1973, Jennifer Kelly, a prostitute, was robbed and raped by six men, including the decedent, Richard ('Moses') Patterson. The police were called to the scene at 14th and Clifton Streets, N.W., but Kelly refused to press charges. When the incident was over she set out to find Trice, whom she described at trial as "my boyfriend, my man." She eventually located Trice at the Pitts Hotel around 3:30 or 4:00 a. m. and told him about the incident. Kelly and Trice got into a brown Thunderbird and drove in the direction of 14th and Clifton Streets, but before going far they were stopped by the police for speeding. Kelly explained that they were on the way to the police station to report the fact that she had been raped. She seemed unable to decide if she should press charges and at one point asked Trice if he wished to do so. He replied that no, this was taking too much time, they would take care of it later. She did go alone with the officers to Clifton Street where she pointed out Patterson, but ultimately she refused to press charges, saying that "her man would take care of it."

Kelly returned to the Thunderbird to find that appellant Dean had joined Trice. She got into the back seat of the car, Dean drove, and Trice sat in the passenger seat. When they got to Clifton Street at about 5:30 a. m., Kelly pointed out Patterson as one of the men who had raped her. Trice jumped out of the car and chased Patterson while shooting at him. Trice returned to the car and Dean drove up the street, made a U-turn and came back down. The car slowed and Trice got halfway out to shout something to the effect that he was going "to kill all you mother-fuckers about my women." Patterson meanwhile had broken into the home of a Mrs. Washington, where he died before the police arrived.

The entire shooting incident was witnessed by Willie Shaw who identified Trice as the killer. Shaw testified that a few days before the killing, in his presence, Trice had told a man named 'New York' that if people didn't stop "fucking with his bitches, he was going to come there [Clifton Street] and kill somebody."

Officers Poole and Russ and Detective Chichester, who were present at the 4:30 a. m. speeding stop, also testified. All three had been called to the scene of the murder at 5:43 a. m., and Russ and Chichester had responded as well to the rape and robbery call earlier at 2:00 a. m. Russ misidentified Trice in court and Poole could not identify him. Chichester had identified Trice at a lineup held October 10, 1974 and identified him at trial.

Detective Richard Williams testified that on July 10, 1973, Dean voluntarily appeared at the police station and said that on the night of July 6, 1973, he had been driving a brown Thunderbird in the area of 14th and Clifton Streets around 2:00 a. m. He heard shooting but did not stop. In response to Detective Williams' questions Dean said that earlier in the evening he had been around 9th and T Streets at the Hollywood Club in the company of Terry Trice. When the detective asked him if he had been stopped by the police earlier that evening he said he had not, and when the detective pointed out that according to police records his car had been stopped, Dean refused to talk any more and called his attorney. As he was not a suspect at that time he was free to depart. This testimony is the subject of Trice's first claim of error.[1]

The defenses advanced were alibi and misidentification. Trice, his mother and Bruce Griffith testified that on the night of July 6, 1973, Trice had a sore throat and had stayed at home in his mother's apartment. He had been planning to have a party, Trice said, which he cancelled when he became ill. He was not able to notify Griffith in time and Griffith accordingly arrived for the party between midnight and 1:00 a. m. Trice's fiancée, who did not

---

1. At a hearing out of the presence of the jury the court determined that Williams' testimony was admissible against Dean. Its admissibility was not seriously challenged below, and is not challenged here.

testify, and their baby were also in Trice's room. They stayed up all night talking, drinking, smoking, listening to records and looking at photograph albums. Griffith said he left the apartment around 7:00 a. m.

The defense called three witnesses who had been at 14th and Clifton Streets at the time of the shooting. Lee Swain had been talking with Patterson when Trice pulled up, Rodney Patterson had been down the street in his car, and Quincello Milligan had appeared on the street in time to see the Thunderbird pass the second time and hear Trice shout. Swain and Patterson said that Trice was not the man who had done the shooting. Swain and Milligan had attended a lineup on August 1, 1973, and identified one Troy Dickerson as the killer.[2] Milligan, Griffith, Patterson, and Trice were all impeached with prior convictions.

## II

Before Detective Williams testified, the following exchange took place between Trice's counsel and the court:

[DEFENSE COUNSEL]: Your Honor, I understand his testimony is going to be in regard to Mr. Dean stating that he had been together with Mr. Trice all this day, and on this night. Now, I think I am entitled to an instruction at this time if there is some evidence to be used against one defendant and yet on the other hand these two people are being tried separate-

ly and apart, and so that the Jury doesn't get—

THE COURT: I will give them the appropriate instruction, even when the testimony comes out [counsel].

· [DEFENSE COUNSEL]: Very good.

Apparently through inadvertence, no cautionary instruction was given at that time and counsel failed to alert the court to the oversight. Upon request by counsel at the end of the trial,[3] however, the court did instruct the jury in general terms that some of the evidence presented was admissible only against one defendant and not the other.[4] Trice's attorney, after an argument concerning the manslaughter instruction, announced that he was satisfied with the jury charge.

Even assuming that through the request for a cautionary instruction before presentation of the testimony counsel properly preserved the issue on appeal,[5] and that an immediate instruction was required, the omission of the instruction was not so prejudicial as to require reversal. It is true that Dean's statement, which was inadmissible hearsay as to Trice, undercut Trice's alibi. It was inconsistent with his story of having been at home ill all during the evening, and contradicts his subsequent testimony that he had slept all day (July 5) and had only awakened when Griffith arrived at midnight. It also places Trice in the com-

---

2. Dickerson was originally indicted for the murder along with Kelly. Charges against both of them were dropped when Kelly told the police that it was actually Trice who shot Patterson.

3. The colloquy between counsel for Trice and the court was:

[DEFENSE COUNSEL]: Now, I believe Your Honor has indicated that you would give instruction 2.3—that is—
THE COURT: 2. what?
[DEFENSE COUNSEL]: 2.53.
THE COURT: Yes.
[DEFENSE COUNSEL]: Your Honor has indicated that you will give that on a previous occasion, and I asked Your Honor—
THE COURT: Yes.
[DEFENSE COUNSEL]: And I think that covers it.

4. The requested instruction was as follows:

Now, during the course of this trial there was certain evidence admitted only with respect to a particular defendant and not against the other defendant. You may consider such testimony only with respect to the defendant against whom it was offered. You must not consider it in any way in your deliberations with respect to the other defendant.

5. *But see Keith v. United States*, D.C.App., 232 A.2d 92 (1967), where the trial judge agreed to comply with defense counsel's request for a limiting instruction on an admission by one codefendant and then through oversight failed to do so. Counsel did not call this omission to the court's attention. This court apparently felt that the issue had not been properly preserved for it ruled that the omission did not reach the level of *plain* error.

pany of Dean on the night of the murder. Furthermore, as Dean did not take the stand, Trice was not able to cross-examine him. Thus, Trice argues, he was denied his constitutional right of confrontation.

■ Any possible prejudice resulting from admission of Dean's statement without an immediate limiting instruction does not approach the level of seriousness present in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which appellant Trice cites. In a recent discussion of the *Bruton* doctrine this court set forth three criteria to be met before the admission of a codefendant's statement is considered so prejudicial that an ultimate cautionary instruction will not offset its effect. The statement must: (1) directly implicate the appellant, (2) be made by one whose interest is adversely affected and who is not a government informant, and (3) the statement itself is as "powerfully incriminating" as a confession. There must also be no independent evidence of guilt. *Brabham v. United States*, D.C.App., 326 A.2d 254, 256 (1974), *cert. denied*, 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975). Although Dean's statement meets the second criterion it neither directly implicates Trice in the murder nor is it as incriminating as a confession.[6] Furthermore, there was ample independent evidence of guilt.

We conclude, therefore, that omission of an immediate cautionary instruction was not reversible error, particularly in view of the instruction given at the end of the trial.

### III

■ Both appellants protest the trial court's refusal to give an instruction on manslaughter as a lesser included offense of murder. In order to be entitled to a manslaughter instruction, however, there must be some evidence of adequate provocation or lack of malice. *Harris v. United States*, D.C.App., 373 A.2d 590 (1977); *Pendergrast v. United States*, D.C.App., 332 A.2d 919 (1975). Adequate provocation has been defined as that which "might naturally induce a reasonable person in the passion of the moment to lose self-control and commit the act on impulse and without reflection." *Hurt v. United States*, D.C.App., 337 A.2d 215, 218 (1975); *Austin v. United States*, 127 U.S.App.D.C. 180, 188, 382 F.2d 129, 137 (1967). In this case there was evidence that Trice had threatened some days before the murder to kill somebody if people didn't stop "messing with his bitches." More importantly, over an hour went by between the time Trice learned of Kelly's rape and his shooting at Patterson which period of time included an interview with the police and afforded adequate time to reflect. Whatever passion was aroused by the rape of one of his prostitutes was under the circumstances clearly not of the sort which would cause a reasonable person to lose control and act without reflection. The trial court correctly ruled that there was insufficient evidence of adequate provocation to justify a manslaughter instruction.

■ It is also significant that although the jury was given an instruction on second-degree murder as a lesser included offense it nevertheless found appellant guilty of the more serious offense. Not only did the jury find malice, which must be lacking in manslaughter or be mitigated by the presence of circumstances judicially recognized as reducing the degree of criminality, *United States v. Bradford*, D.C.App., 344 A.2d 208, 215 (1975), but it also found premeditation. Therefore, it is highly unlikely that it would have seriously considered a manslaughter instruction if given. *Morgan v. United States*, D.C.App., 363 A.2d 999, 1003 (1976); *Hurt v. United States, supra* at 218–19; *Belton v. United States*, 127 U.S.App.D.C. 201, 208, 382 F.2d 150, 157 (1967).

---

**6.** The only mention of Trice in Dean's statement was, according to Detective Williams:

I asked him [Dean] where he had been earlier during the course of the night and he stated that the earlier part of the night that he had spent around 9th and T Street, Northwest, around the Hollywood Club.

I asked him was he with anyone and he stated that he was with a friend, Terry Trice.

Accordingly, it was not error for the judge to refuse to give the requested instruction in this case.

## IV

Appellant Dean claims that it was error for the trial judge to deny his motions for severance, first advanced on the third day of the second trial.[7]

Whether to grant a motion for severance is a matter in which the trial judge has wide discretion, and the decision will be reversed on appeal only for an abuse thereof. *Jackson v. United States*, D.C.App., 329 A.2d 782 (1974), *cert. denied*, 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 74 (1975). We find no such abuse here.

The argument presented is that the government's "overwhelming" evidence against Trice was highly prejudicial to Dean. Although it is true that most of the government's evidence implicated only Trice, much of it would have been admissible in a separate trial for the reason that the government would have had to prove the murder to prove the charges against Dean. *See Byrd v. United States*, D.C.App., 364 A.2d 1215, 1219 (1976); *Blango v. United States*, D.C.App., 335 A.2d 230, 235 (1975); *United States v. Barlow*, 152 U.S. App.D.C. 336, 343–44, 470 F.2d 1245, 1252–53 (1972).

Dean also claims that he was prejudiced in the eyes of the jury by the acrimony between Trice and the court, Trice and his attorney, and his attorney and the court.[8] The trial judge offered to instruct the jury to disregard Trice's behavior in relation to Dean if counsel would prepare an instruction, but there is no indication in the record that counsel ever did so. In any event, any prejudice arising from these sources either would not have been cured by a separate trial or was not so serious that we can say Dean was denied "a fair trial and due process of law." *Jackson v. United States, supra* at 787.

## V

There is little merit to Dean's claim that the court should have required an election between the substantive count and the accessory count of the indictment. The jury did in fact acquit him of the more serious offense, thus it is difficult to see wherein lies the prejudice. Indeed, appellant says in his brief that the general rule is that an acquittal on one misjoined count cures any prejudice arising from misjoinder, citing *United States v. Day*, 533 F.2d 524 (10th Cir. 1976); *Gornick v. United States*, 320 F.2d 325 (10th Cir. 1963). He says, however, that he was nevertheless prejudiced in that had the government been required to elect, and chosen the accessory count, he could have testified without adversely affecting the jury's consideration of the first-degree murder count. Without more, this bald assertion does not convince us that Dean was indeed prejudiced by denial of his motion. *Cross v. United States*, 118 U.S.App.D.C. 324, 335 F.2d 987 (1964), does not lend support to appellant's argument. In that case the defendant was forced to defend two separate offenses, different in time, place, and evidence. In such a situation the court held that prejudice could result from the defendant's choosing to testify as to one offense and not the other. That is far different from Dean's case, where there was only one transaction and one set of evidence. In short, appellant has failed to demonstrate that he was embarrassed or confounded in making his defense, *Pointer v. United States*, 151 U.S. 396, 403–04, 14 S.Ct. 410, 38 L.Ed. 208 (1894), and we hold he was not entitled to an election.

The convictions appealed from are

*Affirmed.*

---

7. The first trial of this case lasted from January 30 to February 5, 1975. The court declared a mistrial when the jury proclaimed itself hopelessly deadlocked.

8. Appellant Trice is represented by different counsel on appeal.