Dwight F. FOSTER, Appellant,

v.

UNITED STATES, Appellee.

Albert H. WASHINGTON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–1741, 84–1800.

District of Columbia Court of Appeals.

Argued Nov. 18, 1987.

Decided Oct. 13, 1988.

Neal E. Kravitz, Public Defender Service, with whom James Klein, Public Defender Service, Washington, D.C., was on the brief, for appellant Foster.

Gregg Schaaf, Washington, D.C., appointed by the court, was on the brief, for appellant Washington.

Teresa L. McHenry, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty. at the time the brief was filed, Michael W. Farrell, Mary Ellen Abrecht, and Steven C. Tabackman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge,
NEWMAN and ROGERS, Associate Judges.

NEWMAN, Associate Judge:

In *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), further explicating *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court held "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name but any reference to her existence." *Richardson v. Marsh, supra,* 107 S.Ct. at 1709. The Court further stated: "We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* at 1709 n. 5. In this case, we must decide the question the Supreme Court explicitly left open—under what conditions may the court admit the confession of a nontestifying codefendant in which the defendant's name has been replaced by neutral references coupled with a proper limiting instruction.

In a joint trial, Foster, Washington and Gilliam were tried for murder, armed robbery and related offenses. Foster was convicted of second-degree murder, three counts of armed robbery and related offenses. Washington was convicted of three counts of armed robbery.[1] Foster contends his confrontation rights were violated by the admission of Washington's redacted statement. Both Foster and Washington contend their sixth amendment rights to a speedy trial were violated. We hold the trial court committed error in admitting Washington's statement into evidence at the joint trial; we adopt the doctrine of contextual analysis. However, we find this error harmless beyond a reasonable doubt.[2] We affirm.

I

On March 10, 1983, Foster, Washington and Gilliam went into an "oil joint" on U Street in the District of Columbia. An "oil joint" is a place where persons go to inject narcotics. When they entered, they drew guns and Foster announced that this was a stick-up. The robbers searched those who were present and took their property. Unfortunately for Alfred Lunsford, as it turned out, Lunsford recognized Foster and called him by his nickname "Rock." Foster angrily warned those present not to say his name again or that person would be hurt. Lunsford responded "Okay, Rock." Being true to his word, Foster shot Lunsford through the head, killing him. The foregoing summary is the version of the

---

1. Gilliam was also convicted of three counts of armed robbery. His appeal has not been consolidated with these.

2. The speedy trial claims are without sufficient merit to warrant discussion. *See Barker v. Win-go,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Graves v. United States,* 490 A.2d 1086 (D.C.1984) (en banc), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986).

events given at trial by five government witnesses. Although the witnesses contradicted each other in certain respects, they all gave basically the same account implicating Foster.

When Washington was arrested on April 22, 1983, he gave a series of oral statements to Detective Corboy of the Homicide Squad. After initially denying any knowledge of or participation in the events, Washington ultimately told Corboy that he was present at the "oil joint" and did participate in the robberies, but only under duress. His account of the transaction otherwise varied from the other witnesses in his recollection that it was he who first used Foster's nickname "Rock," followed by Foster's warning, and Lunsford making the fatal mistake of using the name "Rock."

Prior to trial, Foster moved for severance on the grounds that admission of Washington's statements (which were offered by the government as confessions or admissions) would violate Foster's sixth amendment confrontation rights if Washington did not testify. Foster argued that redaction by substituting neutral terms for "Rock" in Washington's confession would be ineffective. The trial court denied the motion ruling that redaction was a sufficient protection. At trial, it was proposed that Washington's oral confessions be redacted by substituting the "two other men" where the statement referred jointly to Foster and Gilliam, and "the other man" when it referred to Foster. Foster objected, urging that, *taken in context,* it would be clear that he was being referred to both as one of the "two other men" and "the other man" who objected to the use of his nickname, and shot Lunsford. The trial court rejected this argument and Foster's renewed objection. The court ruled that redaction protected Foster's confrontation rights so long as Washington's statement, "standing alone" did not explicitly implicate Foster. Thereafter, Detective Corboy told the jury:

[CORBOY]: He said that he had been at work that day and was driving a Department of Transportation car and had gone up on 14th Street and bought some heroin.

[PROSECUTOR]: Did he use the word, "Heroin"?

[CORBOY]: He referred to it as "blow." He said that he went around to 15th and T Street and parked the car on the corner and walked back to the alley, paid the man at Ike's Oil Joint the $2 or whatever the charge was to get in to use the facilities. He said that he had been there for about 15 minutes when two other men entered. He said he was under the impression that these other two men were like him and wanted to use the facilities.

After they came in, however, he said that they announced they were going to rob the place. They began to do that. Once they announced they were going to rob the place, he says that he called out the name of one of these men and the man warned him not to use his name again, and if he did, he was going to blow his head off. He said he was directed by this man and the other man to assist them and that his assistance was to be that he was to search all the people there and take their drugs and money for them. He was doing this when there was a knock at the front door and he went to the door, along with one of the two men doing the robbery, and two women entered the place.

Once these two women were inside and he was searching them for any drugs and money, and at the time he heard someone else say the name that he called out earlier and that was immediately followed by a shot. At that point, everybody then started to run and that was the extent of his involvement in this.

The court then gave the following limiting instruction:

Ladies and gentlemen of the jury, you have just heard testimony about an alleged statement made by the Defendant Washington to this witness, following his arrest. This evidence is admitted solely against the Defendant Washington. It is not to be considered by you in any way, to indicate the guilt of any other code-

fendant and indeed, you cannot consider that evidence against any of the codefendants in this case, who are Mr. Gilliam and Mr. Foster. It may be considered only by you in connection with your determination of whether or not the Defendant Washington is guilty or not guilty of these offenses. It's limited solely to him and is admissible only against him at this trial.

## II

The seminal case dealing with the Confrontation Clause and the use in a joint trial of a nontestifying codefendant's confession or admission which implicates the defendant is *Bruton v. United States, supra.* In *Bruton,* the Court pointed out the inherent prejudice resulting from the admission of such an extrajudicial statement, acknowledging that such statements are powerfully incriminating and that limiting instructions are ineffective to eliminate the prejudice. Thus, it held that the admission of such a statement by a nontestifying codefendant violated the defendant's Confrontation Clause rights. The Court noted that courts had tried to accommodate the defendant's confrontation rights and the government's desire to use the statement in a joint trial by redacting the statement. It noted, however, that such practice had been criticized. 391 U.S. at 134 n. 10, 88 S.Ct. at 1626 n. 10.

During the last term, the Court again addressed a *Bruton* problem, but this time where there had in fact been redaction. In *Richardson v. Marsh, supra,* the Court ruled that the Confrontation Clause was not violated by the admission of a nontestifying codefendant's statement (with a proper limiting instruction) where the statement had been redacted to eliminate not only the defendant's identity but the role played by the defendant in the transaction had been totally deleted from the statement (the very existence of the defendant or his/her role), the fact that the defendant is linked to the confession by other evidence properly admitted against him does not present a Confrontation Clause violation. The Court noted that the statement in *Bruton* was facially incriminating and an instruction

was insufficient to insulate from violating the Confrontation Clause. In contrast, the confession in *Richardson v. Marsh* only became incriminating "when linked with [other] evidence introduced later at trial (the defendant's own testimony)." 107 S.Ct. at 1707. The Court further said:

Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence. Specific testimony that "the defendant helped me commit the crime" is more vivid than inferential incrimination, and hence more difficult to thrust out of mind. Moreover, with regard to such an explicit statement the only issue is, plain and simply, whether the jury can possibly be expected to forget it in assessing the defendant's guilt; whereas with regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget. In short, while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton*'s exception to the general rule.

*Id.* at 1707–08.

The government contends we have implicitly rejected contextual analysis in prior cases. The government cites us to our decisions in *Carpenter v. United States,* 430 A.2d 496 (D.C.) (en banc), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981); cases preceding *Carpenter,* citing *Dean v. United States,* 377 A.2d 423 (D.C. 1977); *Brabham v. United States,* 326 A.2d 254 (D.C.1974), *cert. denied,* 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975), as well as cases subsequent to *Carpenter* citing, *e.g., Hawthorne v. United States,* 504 A.2d 580 (D.C.1986). Foster contends that the United States Court of Appeals for the District of Columbia Circuit, in a decision binding on us, *see M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971) (a division of this court

cannot refuse to follow another division of this court or a decision of the United States Court of Appeals for the District of Columbia decided prior to February 1, 1971) has already adopted contextual analysis, citing *Serio v. United States*, 131 U.S.App.D.C. 38, 401 F.2d 989 (1968) (per curiam). We also note in this regard *Greenwell v. United States*, 119 U.S.App.D.C. 43, 336 F.2d 962 (1964), a case which preceded *Serio* and appears to be in accord with it. The government responds that we have not cited *Serio* in any of our previous opinions and suggests that by the authorities we have cited, we have implicitly rejected *Serio*. Foster further suggests that we have at least implicitly adopted contextual analysis, citing us to *Carpenter, supra*, 430 A.2d at 505 n. 15 as well as *Dumas v. United States*, 483 A.2d 301 (D.C.1984). The government contends that *M.A.P. v. Ryan, supra*, neither compels us to adopt contextual analysis nor requires us to reject it. We need not decide whether we are compelled to follow *Serio* and *Greenwell* for, as we discuss later, we find them, and the cases from other courts doing a similar contextual analysis, to be persuasive; we adopt their rationale.

When *Bruton* and *Richardson v. Marsh* are read in conjunction, as they must be, the issue presented seems to us to be where along a continuum can we conclude with the requisite degree of certainty that an instruction will likely "be successful in dissuading the jury from entering on the path of the inference in the first place, so that there is ,no incrimination to forget." *Richardson v. Marsh, supra*, 107 S.Ct. at 1708. Put another way, the issue is at what point "in light of the competing values at stake" *Tennessee v. Street*, 471 U.S. 409, 415, 105 S.Ct. 2078, 2082, 85 L.Ed.2d 425 (1985), we are no longer justified in relying on the assumption that jurors are able to and did follow the judges instruction to compartmentalize the evidence as to the codefendants.

In the companion case to *Richardson v. Marsh, supra,* the Court provided some assistance in this regard. In *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed. 2d 162 (1987), decided the same day as *Richardson v. Marsh,* the Court revisited the issue presented in *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979) (Does *Bruton* apply where the codefendant's confession is corroborated by that of the defendant—the so-called interlocking confessions). The plurality in *Parker v. Randolph* had read *Bruton* to mean that a Confrontation Clause violation only occurs where the "introduction of a codefendant's confession is 'devastating' to the defendant's case." *Cruz v. New York, supra,* 107 S.Ct. at 1717. Where the defendant's own confession had been introduced into evidence, it is that confession, said the plurality, that devastates the defendant's case, not the admission of the codefendant's confession. Justice Blackmun dissenting in *Parker v. Randolph,* would have held that the interlocking confessions may sometimes render a Confrontation Clause violation harmless, but has no relevance to whether the clause has, in fact, been violated. In *Cruz,* the majority of the Court explicitly adopted the approach espoused by Justice Blackmun. It expressly rejected a case-by-case analysis of "devastating impact" as the basis of determining Confrontation Clause error.[3]

Prior to *Richardson v. Marsh,* the United States Courts of Appeal had considered the question of contextual analysis with varying results; none of them appear to have addressed the matter in light of *Richardson.* The federal appellate decisions span a wide spectrum. On the one end, there is *United States v. Belle, supra* note 3, which rejects contextual analysis. It held that *Bruton* only comes into play where the challenged statement on its face (standing alone) directly implicates the defendant. Where linkage is necessary, no *Bruton* violation occurs because that link-

---

**3.** In this regard, the Court seems to have reached the same conclusion as the dissenting judges in *United States v. Belle,* 593 F.2d 487, 501–512 (3d Cir.) (Gibbons, J., dissenting), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 277 (1979); we note that Judge Gibbons' dissent presents a detailed, lucid, and penetrating analysis of litigation concerning and principles involved in the Confrontation Clause; we commend it to the reader.

age is subject to cross-examination. The court also pointed out what it deems to be the impracticalities and difficulties for the trial in adopting such an approach. 593 F.2d at 495–96. We note that the redacted statement in *Belle* was like that in *Richardson v. Marsh*, i.e., the very existence of a codefendant's role had been redacted from the statement. The First Circuit also appears to have rejected contextual analysis. The lead case in the First Circuit is *United States v. Cleveland*, 590 F.2d 24 (1st Cir.1978). *See United States v. Greenleaf*, 692 F.2d 182, 189 (1st Cir.1982), *cert. denied*, 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); *see also United States v. Porter*, 764 F.2d 1 (1st Cir.1985). We note that at least in its seminal case, *Cleveland* and perhaps others (*see, e.g., Porter*) the redaction with which the First Circuit dealt was like that in *Richardson v. Marsh*, i.e., the statement, as admitted, gave no hint of any role played by anyone else.

The Ninth Circuit appears to have rejected contextual analysis, although the opinions from that circuit are not crystal clear on this point since they generally do not give the text of the redacted statements. *See United States v. Wright*, 742 F.2d 1215 (9th Cir.1984); *United States v. Brooklier*, 685 F.2d 1208 (9th Cir.1982) (per curiam), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *United States v. Tavelman*, 650 F.2d 1133 (9th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982); *United States v. Burreson*, 643 F.2d 1344 (9th Cir.), *cert. denied*, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981). The Eleventh Circuit likewise appears to have rejected contextual analysis. *See United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir.1984) ("For *Bruton* to apply, a codefendant's statement must be clearly inculpatory standing alone."); *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985); *United States v. Garrett*, 727 F.2d 1003, 1014 (11th Cir.1984) ("In view of the non-inculpatory nature of the confession, as well as the cautionary instruction given by the trial court, we conclude that there was no substantial risk that the jury looked to Jonathan's confession as bearing on Christopher's guilt.")

The situation in the Second Circuit is somewhat unclear. Although *United States v. Wingate*, 520 F.2d 309 (2d Cir. 1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976), and *United States ex rel. Nelson v. Follette*, 430 F.2d 1055 (2d Cir.1970), *cert. denied*, 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818 (1971), were cited by the Third Circuit in *Belle* as authority for rejection of contextual analysis, other Circuits read these cases differently, *see Marsh v. Richardson*, 781 F.2d 1201, 1210 n. 7 (6th Cir.1986), *rev'd on other grounds*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); so do we. That the Second Circuit itself recognizes that certain redaction may be insufficient to avoid a Confrontation Clause violation appears to us to be shown by the reversal of the conviction in *United States v. Gonzalez*, 555 F.2d 308 (2d Cir.1977). There, the court held that although Gonzalez was not named, the context of the codefendant's confession about obtaining a key from a man when taken in context with the other evidence made it well nigh inevitable that the jury would infer that the confession was refering to Gonzalez. The court cited with approval the District of Columbia Circuit's decision in *Serio v. United States, supra*, a case we will discuss later. The court applied a two-prong test to determine whether, viewed in context, no *Bruton* violation was present: 1) does the jury have to make a substantial inference to identify the defendant in the out-of-court statement, and 2) does the statement constitute a vital part of the government's case against the complaining defendant. *United States v. Gonzalez, supra*, 555 F.2d at 316 (citing *United States ex rel. Nelson v. Follette, supra*, 430 F.2d at 1055); *see also United States v. Danzey*, 594 F.2d 905 (2nd Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). In *Gonzalez*, the court stated that what it referred to as a "two-prong" test had been adopted in *United States ex rel. Nelson v. Follette, supra*. Thus, to understand *Gonzalez*, one may usefully examine

*Nelson v. Follette.* In *Nelson v. Follette, supra,* the court concluded that the statement at issue alone did not implicate Nelson and thus there was not a *Bruton* (powerfully incriminating) statement. The court held that the limiting instructions satisfied the Confrontation Clause. The court continued, however, that assuming the statement was inculpatory of Nelson (because the jury would not have to make a substantial inference to identify him), it was not a vital part of the government's case against Nelson, and thus would not have a devastating effect, and therefore, limiting instructions could be effective to protect Nelson's rights. 430 F.2d at 1058. Significantly, the court reached this conclusion in the course of its discussion of reversible error, quoting the language in *Bruton* that not every admission of inadmissible hearsay or other evidence can be considered reversible error unavoidable through limiting instructions. *Id.* Also, when the court thereafter referred to what *Gonzalez* describes as a two-prong exception, the court refers to "the *Bruton* tests", *id.* at 1059 (emphasis added), which, given the court's previous discussion, can only be first, is there a Confrontation Clause violation, and second, if so, is there reversible error because limiting instructions will not suffice to protect the defendant's constitutional rights.[4] Later in *United States v. Burke,* 700 F.2d 70 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983), the court reaffirmed that *Bruton* was inapplicable if the redacted statement is not "clearly inculpatory as to a [complaining] codefendant or vitally important to the government's case." *Id.* at 85 (citation omitted). The court, explained

"the redacted statement, standing alone, must connect a co-defendant with the crime" to be clearly inculpatory. *Id.* However, the court went on to say, "a redacted statement is clearly inculpatory where the jury is aware that names have been redacted, and, in light of other evidence, could infer that the omitted names included a codefendant's." *Id.* *But see United States v. Wilkinson,* 754 F.2d 1427, 1435 (2d Cir.1985) ("A defendant's *Bruton* rights would be violated, however, only if the statement, standing alone, would clearly inculpate him without introduction of further independent evidence.).[5]

The Fifth Circuit, in *Clark v. Maggio,* 737 F.2d 471 (5th Cir.1984), *cert. denied,* 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985), appears to have adopted contextual analysis, at least where the redacted statement makes clear that the confessing codefendant had named names which had been redacted. *But see United States v. Stewart,* 579 F.2d 356 (5th Cir.) (per curiam) (statement admissible so long as it is not incriminating "on its face"), *cert. denied,* 439 U.S. 936, 99 S.Ct. 332, 58 L.Ed.2d 332 (1978). The Sixth Circuit has clearly enunciated and adopted contextual analysis. In *Hodges v. Rose,* 570 F.2d 643 (6th Cir.), *cert. denied,* 436 U.S. 909, 98 S.Ct. 2243, 56 L.Ed.2d 408 (1978), the court found the admission of a redacted confession where the codefendant's name had been deleted and referred to as "blank" to be constitutional error. The court said:

[T]he court must decide whether the statement incriminates the defendant against whom it is inadmissible in such a way as to create a "substantial risk" that the jury will look to the statement in

---

**4.** In the subsequent *Wingate* case, 520 F.2d 309 (2d Cir.1975), cited in *Gonzalez* as relied upon by the government, the court focused only on the fact that the codefendant's statement was neither clearly inculpatory on its face nor vitally important to the case against the defendant, whose own testimony amounted to a confession of the crime. The government, according to the court's opinion, relied on *Wingate* for·the proposition that "a redacted statement from which the name of the co-defendant had been excised was properly admitted because the jury could only identify the person whose name was excised as the co-defendant [sic] by concluding from ex-

trinsic evidence that he was the accomplice." *United States ex rel. LaBelle v. Mancusi,* 404 F.2d 690 (2d Cir.1968) (redacted statement clearly incriminating when considered with other evidence), and *Serio* (same).

**5.** We note that the redaction in *Wilkinson* was as complete as that approved by the Supreme Court in *Richardson v. Marsh.* For as the circuit court noted: "[i]ndeed, there was no reason for the jury to believe that anything had been redacted from her statement." *United States v. Wilkinson, supra,* 754 F.2d at 1435.

deciding on that defendant's guilt. Such an assessment may require consideration of other evidence in order to determine whether mere deletion of the defendant's name will be effective in making the statement non-incriminating as to him. But consideration of the weight of independent evidence is both improper and unnecessary to determination of the *Bruton* issue at the trial court level.

*Id.* at 647. Later, in *Lyle v. Koehler,* 720 F.2d 426 (6th Cir.1983), the court revisited this issue. Lyle had been convicted in the state courts of Michigan of felony murder and related offenses. After exhausting his state remedies, he challenged his convictions by federal habeas corpus. The United States District Court denied relief; the Circuit Court reversed. At Lyle's trial, letters which had been written by his non-testifying codefendant, Kemp, were admitted into evidence. These letters attempted to get witnesses to corroborate a fabricated alibi; they made mention of the role "Rock" was to be given in the fabricated alibi. Lyle objected to the admission of these letters contending the jury would naturally conclude that he was "Rock." In affirming the conviction, the Michigan Court of Appeals said that there was no evidence presented at trial that Lyle was known as "Rock" or that he sought alibi assistance at all. The United States Court of Appeals concluded that taken in context with all the other evidence, the jury would have to draw only a "short chain of inferences in order to link the letters and Lyle's participation in the crime ..." *Id.* at 435. It held that there was a "substantial risk" that the jury would consider the letters when deciding Lyle's guilt. *See also Marsh v. Richardson, supra,* 781 F.2d at 1201, *rev'd on other grounds,* 107 S.Ct. at 1709 n. 5 (leaving open the specific issue we face here). The Seventh Circuit has likewise adopted contextual analysis. *See United States v. Key,* 725 F.2d 1123 (7th Cir.1984); *English v. United States,* 620 F.2d 150 (7th Cir.) (per curiam), *cert. denied,* 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed. 2d 75 (1980) (Both *Key & English,* primarily rely on *United States v. Gonzalez, supra* ). *But see United States ex rel. Cole*

*v. Lane,* 752 F.2d 1210, 1216 (7th Cir.1985) (citing *United States v. Belle, supra,* 593 F.2d at 493).

The United States Court of Appeals for the District of Columbia Circuit has also addressed this question and adopted contextual analysis. One case in which the court considered the issue was *Serio v. United States, supra.* In a pre-*Bruton* decision, relying on *Delli Paoli v. United States,* 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed. 2d 278 (1957), which *Bruton* reversed, the court had affirmed a conviction where a codefendant's confession had been redacted to substitute "another man" or similar term for Serio's name. The Supreme Court vacated the judgment and remanded for reconsideration in light of *Bruton.* On remand, the court reversed the conviction, finding that it was well nigh inevitable that the jury would conclude that Serio was the other man referred to in the confession. *See also Greenwell v. United States, supra,* 119 U.S.App.D.C. at 50, 336 F.2d at 969 (substitution of neutral term such as "named person" for codefendant's name was insufficient redaction since "with other evidence ... connecting the codefendants in the commission of the crime, it is difficult to believe that the jury was unable to divine who the 'anonymous nobody' referred to in the confession was").

*People v. Cruz,* 121 Ill.2d 321, 117 Ill. Dec. 907, 521 N.E.2d 18 (1988), is the only case which has come to our attention subsequent to *Richardson v. Marsh* which addresses the issue in this case; the Supreme Court of Illinois explicitly adopted contextual analysis. In the codefendant's statement, the term "friends" or other terms had been substituted for the names of the other culprits. The court concluded that no "substantial inference" was required by the jury to identify Cruz as one of the "friends" mentioned in the testimony. This was particularly so when other evidence was introduced indicating Cruz was a friend of the confessing non-testifying codefendant.

We are persuaded by the reasoning of those courts which have adopted contextual analysis, particularly the cases from the

**1378** 

District of Columbia Circuit and the Sixth Circuit. It appears to us that somewhere along the continuum from *Bruton* to *Richardson v. Marsh*, one reaches a point where one cannot have the requisite degree of assurance that the jury will not improperly consider the evidence in deciding the guilt of the defendant against whom the evidence is not admissible despite a proper limiting instruction. Hence, we must be mindful of the competing interests at stake, i.e., the legitimate concerns of judicial economy, *see Bruton v. United States, supra;* versus, the Confrontation Clause Rights of the accused, a right the denial of which "calls into question the ultimate 'integrity of the fact-finding process....'" *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) (quoting *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969)).

 On the one hand, we are aware that the legitimate concerns of judicial economy, particularly the benefits of joint trials which are provided for under the Federal Rules of Criminal Procedure, counsel that we should not bar the use of statements containing redacted references to neutral somebodies in total. On the other hand, we are also aware of the true incriminatory nature of even a redacted statement where the role of a neutral somebody is disclosed. However, we are certain that when the Confrontation Clause and the desire for judicial economy collide, it is the Confrontation Clause which must prevail given its centrality to the "integrity of the fact-finding process." *Berger v. California, supra,* 393 U.S. at 315, 89 S.Ct. at 541. Indeed, in *Bruton,* the Supreme Court in recognizing the benefits of joint trials,[6] declined to yield to the procedure when faced with a Confrontation Clause challenge. In holding that there was a "substantial risk" that the jury (despite instructions to the

contrary) found the defendant guilty based upon the statement of the nontestifying codefendant, *Bruton v. United States, supra,* 391 U.S. at 126, 88 S.Ct. at 1622, the Court went on to say:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Id.* at 135–36, 88 S.Ct. at 1627–28 (citations omitted). The question thus is what test shall be applied.

 We hold that a properly and effectively redacted statement substituting neutral references for names (including nicknames and the like) and/or descriptions (such as "the white guy" in *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), or "the thin man" in *Dumas v. United States, supra*), may be admitted into evidence at a joint trial (when coupled with proper limiting instructions) unless a "substantial risk" exists that the jury will consider that statement in deciding the guilt of the defendant. This is consistent with *Bruton v. United States, supra.* There, the Court said: "We hold that, because of the *substantial risk* that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in the joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Bruton v. United States, supra,* 391 U.S. at 126, 88 S.Ct. at 1622 (emphasis added). In determining whether a substantial risk

---

6. The Supreme Court stated in *Bruton:*

 The rules are designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial. *Daley v. United States,* 231 F.2d 123, 125 [ (1st Cir.1956) ]. An

 important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence. *See, e.g., Blumenthal v. United States,* 332 U.S. 539, 559–60 [68 S.Ct. 248, 257–58, 92 L.Ed. 154].

 391 U.S. at 131 n. 6, 88 S.Ct. at 1625 n. 6.

exists, the trial court must consider the degree of inference the jury must make to connect the defendant to the statement and the degree of risk that the jury will make that linkage despite a limiting instruction. Such an assessment will require consideration of other evidence to determine whether the redaction is effective, when taken in context, to avoid linkage with the defendant. Therefore, we hold that in determining whether a "substantial risk" exists, the trial court should consider the first-prong of the test enunciated in *United States v. Gonzalez, supra,* i.e., does the jury have to make a substantial inference that the defendant was the person referred to by neutral references in the redacted statement. However, except as relevant to application of harmless error analysis, we reject the second prong of the *Gonzalez* test (i.e., does the statement even if incriminatory, constitute a vital part of the government's case against the defendant) insofar as it has been interpreted, incorrectly we think, to suggest that there is not a confrontation clause violation. Such an inquiry would require the trial court to weigh independent evidence of the defendant's guilt. This is "both improper and unnecessary to [the] determination of the *Bruton* issue", *Hodges v. Rose, supra,* 570 F.2d at 647, because it requires a case-by-case analysis of devastating impact, *see Cruz v. New York, supra;* see also our discussion of *Nelson v. Follette, ante* at p. 1375. Stated otherwise, whether the incriminatory statement is vital to the government's case is relevant to the issue of the effect or consequence of the constitutional violation— whether the error is harmless beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967)—and not whether a violation exists. *See Cruz v. New York, supra; Hodges v. Rose, supra,* 570 F.2d at 647. We believe that the test we have enunciated here properly balances the Confrontation Clause rights of the defendant and the interest of the people in judicial economy.[7]

**III**

■ Applying the test we enunciate today, we conclude that Foster's Confrontation Clause rights were violated. Foster's nickname "Rock" was inexorably intertwined with the testimony of the government witnesses. All five government eyewitnesses testified that Lunsford was killed when he .violated Foster's order not to mention the name "Rock." The government presented other evidence that Foster's nickname was Rock. In light of these facts, there was a substantial risk that the jury would conclude that "Rock" was the name referred to in Washington's statement and that Foster was one of the "two men" to whom Washington referred to as those who perpetrated the robberies and killed Lunsford. The jury did not have to make a substantial inference to reach this conclusion. To hold that there was not a substantial risk that they would consider this evidence (which is inadmissible as to Foster) in considering Foster's guilt (limiting instruction or not) would require us to wink at the reality of human behavior of jurors as recognized by the Court in both *Bruton* and *Richardson v. Marsh.*

**IV**

As stated previously, *Bruton* violations are subject to. analysis to determine whether they are harmless beyond a reasonable doubt applying the test of *Chapman v. California, supra. Harrington v. California, supra.* In *Harrington,* a white man and three black men were tried jointly for murder. The confessions of the three black men which implicated Harrington— referring to him as "the white guy" or similar term—were admitted in evidence over objection. The Court found the admission of such statements to violate *Bruton.* Mr. Justice Douglas, speaking for the majority said:

> Petitioner argues that it is irrelevant that he was not named in ... [the] ... confessions, that reference to "the white

guy" made it as clear as pointing and shouting that the person referred to was the white man in the dock with the three Negroes. We make the same assumption. But we conclude that on these special facts the lack of opportunity to cross-examine ... [the confessing codefendants] ... constituted harmless error under the rule of *Chapman*.

*Id.* 395 U.S. at 253, 89 S.Ct. at 1728.[8]

■ We turn to the question whether the Confrontation Clause violation in this case is harmless beyond a reasonable doubt, *see Chapman v. California, supra.* The testimony of the government's witnesses was basically consistent and overwhelming as to the role played by Foster in the crimes charged. Their testimony, given in graphic detail, painted the picture of the robberies, the killing of Lunsford by Foster for using the nickname "Rock," as well as the subsequent disposal of Lunsford's body. Foster urges, however, that all of these government witnesses were drug users with special reason to curry favor with the government. The same can be said to be true of Washington. His statement implicates him as a drug user and evinces in the statement itself his attempt to minimize his role while maximizing the role of the other two men. Considering the record as a whole, we are satisfied that the constitutional error in this case is harmless beyond a reasonable doubt applying the test enunciated in *Chapman v. California, supra.* Put another way, we are satisfied that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman, supra,* 386 U.S. at 23, 87 S.Ct. at 827 (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)).

The convictions appealed from are

AFFIRMED.

PRYOR, Chief Judge, concurring in the judgment:

I conclude that the trial court did not err in declining severance in this case. Thus,

in reaching affirmance, I do not rely on a premise of harmless error.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that a nonconfessing defendant's right of confrontation is violated by the admission, in a joint trial, of a nontestifying codefendant's confession which facially incriminates the defendant. *Id.* at 126, 88 S.Ct. at 1622. The Court explained that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of that failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored," *id.* at 135, 88 S.Ct. at 1627, and that such a context is presented "where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial." *Id.* at 135–36, 88 S.Ct. at 1628. The Court, therefore, concluded that Bruton was denied his constitutional right of confrontation in that case because "the confession added substantial, perhaps even critical, weight to the Government's case...." *Id.* at 127–28, 88 S.Ct. at 1623.

In *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court revisited the rationale of *Bruton* and considered whether it requires the exclusion of a nontestifying codefendant's confession which is redacted to eliminate not only the defendant's name, but also any reference to the defendant's existence. The Court reasoned that "with regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget." *Id.* 107 S.Ct. at 1707–08. Although the Court admitted that "it may not always be simple for the members of a jury to obey the instruction that they disregard an incrimi-

---

8. We note that the Court assumed that the confessions' reference to "white guy" in the context of the case, made it as clear as "pointing and shouting" that it was the defendant who was the

"white guy." Thus, it may be argued that since the Court found a *Bruton* violation, it has implicitly sanctioned contextual analysis, at least to some extent.

nating inference," *id.* at 1708, it was satisfied that "there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton's* exception to the general rule." *Id.* The Court concluded that such a confession falls outside the narrow exception created by *Bruton.*[1]

The question presented for decision in this case is whether the *Bruton* rule should be extended, in limited circumstances, and on the same rationale, to guard against the use of a nontestifying codefendant's statement in which the defendant's name has been replaced with a symbol or neutral pronoun when that statement, viewed in the context of the total trial evidence, proves powerfully incriminating to the defendant. This approach has sometimes been referred to as contextual analysis or contextual implication. While I do not reject such a concept entirely,[2] I would hesitate to formulate a doctrine that would mandate a severance in cases where the prejudicial impact of the codefendant's statement is minimal. Bearing in mind the importance of joint trials, and the familiar remedies of redaction and limiting instructions, the requirement that the challenged statement prove "powerfully incriminating" is, and should be, a demanding one.

I, therefore, agree that it is necessary, in certain circumstances, to approve an extension of the *Bruton* rule. In determining the admissibility of a nontestifying codefendant's statement in which the defendant's name has been replaced with a symbol or neutral pronoun, the trial court should first consider, as a threshold inquiry, whether the jury has to make a substantial inference to identify the defendant as the person mentioned in the statement. When the degree of inference required to link the defendant to the statement is substantial—or, in other words, "[w]here the context may permit an inculpating inference, but does not compel it," *English v. United States,* 620 F.2d 150, 153 (7th Cir.), *cert. denied,* 449 U.S. 859, 101 S.Ct. 160, 66 L.Ed.2d 75 (1980)—it is fair to assume that limiting instructions "may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget." *Richardson v. Marsh, supra,* 107 S.Ct. at 1708; *see West v. United States,* 499 A.2d 860, 868 (D.C.1985); *United States v. Wingate,* 520 F.2d 309, 313 (2d Cir.1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976); *United States v. Key,* 725 F.2d 1123, 1126 (7th Cir.1984); *cf. Carpenter v. United States,* 430 A.2d 496, 505 (D.C.) (en banc), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981). In such circumstances, the trial court need go no further and may properly admit the statement.[3] If, how-

1. Having reached this result, it was then unnecessary for the Court to consider whether the consequences of the jury's failure to follow its instructions would have proved vital to the defendant.

2. The type of incrimination at issue in this case, although inferential in nature, is different from that considered by the *Richardson* Court. An extrajudicial statement in which the defendant's name has been replaced with a symbol or neutral pronoun lies somewhere on the center of the *Bruton–Richardson* spectrum since, although the defendant is not expressly named, the presence of the pronoun or symbol may alert the jury to the fact that another individual is involved, and when the statement is considered with other trial evidence, the jury may improperly infer that the defendant is that individual. *See United States v. Petit,* 841 F.2d 1546, 1556 (11th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988); *Lyle v. Koehler,* 720 F.2d 426, 434–35 (6th Cir.1983); *United*

*States v. Gonzalez,* 555 F.2d 308, 316–17 (2d Cir.1977); *Serio v. United States,* 131 U.S.App.D. C. 38, 39, 401 F.2d 989, 990 (1968); *cf. United States v. Garcia,* 836 F.2d 385, 390 (8th Cir. 1987); *Clark v. Maggio,* 737 F.2d 471, 477 (5th Cir.1984), *cert. denied,* 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985); *United States v. Burke,* 700 F.2d 70, 85 (2d Cir.), *cert. denied* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *but see United States v. Belle,* 593 F.2d 487 (3d Cir.1979). In certain cases, the independent trial evidence may make it "as clear as pointing and shouting that the person referred to [is] the [defendant]," *Harrington v. California,* 395 U.S. 250, 253, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969), and for this reason it cannot fairly be said that limiting instructions will always prove effective.

3. If the jury follows its instructions, there is "no error, constitutional or otherwise." *Cruz v. New York,* 107 S.Ct. 1714, 1719 (1987) (White, J., dissenting); *see Richardson v. Marsh, supra.*

**1382**

ever, the trial court determines that the jury does not have to make a substantial inference, the efficacy of limiting instructions is seriously called into question,[4] and the court should then take the next step and determine whether the consequences of the jury's failure to follow its instructions will prove vital to the defendant. It is only when the jury does not have to make a substantial inference and the statement constitutes a vitally important part of the government's case against the defendant, adding "substantial, perhaps even critical, weight to the government's case," *Bruton, supra,* 391 U.S. at 127, 88 S.Ct. at 1623, that the risk of jury misconduct is so great, and the consequences of that misconduct so vital to the defendant, that a severance should then be required. *See United States v. Wingate, supra,* 520 F.2d at 313 (cautionary instructions ineffective under *Bruton* only where extrajudicial statement clearly inculpatory as to defendant and vitally important to government's case); *United States v. Key, supra,* 725 F.2d at 1126 (*Bruton* violation where confession clearly inculpatory and vital to government's proof); *United States v. Greenleaf,* 692 F.2d 182, 189 (1st Cir.1982) (where there existed substantial evidence independent of extrajudicial statement linking defendant to crime, fact that statement corroborated government's case not enough to satisfy powerfully incriminating standard of *Bruton*), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); *cf. Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965) (nontestifying codefendant's

statement which directly accused defendant of firing shotgun only direct evidence that defendant had done so and coupled with other circumstances "formed crucial link in the proof"); *Richardson v. Marsh, supra,* 107 S.Ct. at 1712 (Stevens, J., dissenting) (confession, when "[v]iewed in the total context of the trial evidence," proved critically important since it was only evidence linking respondent with specific intent to kill victims); *Marsh v. Richardson,* 781 F.2d 1201, 1210 n. 7 (6th Cir.1986) (statement more likely to be powerfully incriminatory the more directly it implicates defendant and where there is other substantial evidence from which the [guilt of the defendant] might be inferred there is not substantial risk that jury relied on the inadmissible evidence in reaching its verdict (construing *United States v. Wingate, supra,* 520 F.2d at 314, and *United States ex rel. Nelson v. Follette,* 430 F.2d 1055, 1059 (2d Cir.1970), *cert. denied,* 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed. 2818 (1971))), *rev'd on other grounds,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *United States v. Cleveland,* 590 F.2d 24, 29 (1st Cir.1978) (where independent evidence against defendants substantial, admission of confession which did not refer to defendants was not so prejudicial as to mandate a severance); *United States v. Belle, supra,* 593 F.2d at 501, 508 (Gibbons, J., dissenting) whether redacted codefendant's confession is particularly significant in prosecution's case against defendant is factor to be considered in determining existence of Confrontation Clause error).[5]

4. Although *Richardson* specifically left open the question whether the *Bruton* rule requires the exclusion of "a confession in which the defendant's name has been replaced with a symbol or neutral pronoun," *id.* 107 S.Ct. at 1709 n. 5, the Court, in its discussion of the efficacy of limiting instructions, spoke in terms of "inferential incrimination" and "linkage evidence." Thus, because we deal here with inferential, rather than explicit, incrimination, I believe that the assumption that jurors will follow their instructions continues to obtain, although with a lesser degree of certainty, in cases where no substantial inference is required to link the defendant to a neutral reference contained in the statement of a nontestifying codefendant.

5. I disagree with the majority that the second prong of the test set forth in *United States v. Gonzalez, supra,* is actually a harmless error inquiry. A *Bruton* error is harmless only if the independent evidence against the defendant is overwhelming. *Harrington v. California,* 395 U.S. 250, 253–54, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). Whether the confession constitutes a vitally important part of the government's case against the defendant is not necessarily relevant to whether any error is harmless, but rather, to whether the consequences of the jury's failure to follow its instructions will prove "so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton, supra,* 391 U.S. at 135, 88

In light of the presumed efficacy of limiting instructions in cases involving inferential incrimination, *see Richardson v. Marsh, supra,* 107 S.Ct. at 1707–08; *supra* note 3, and the importance of joint trials, *Richardson v. Marsh, supra,* 107 S.Ct. at 1708–09, in my view, application of the *Bruton* rule in this context "should be confined to those cases where the jury's ignoring of limiting instructions is most likely to change the verdict, which is to say, those cases where there is the greatest risk that jury misconduct will lead to the conviction ·of an innocent defendant." *Cruz v. New York, supra,* 107 S.Ct. at 1720 n. 2 (White, J., dissenting). In circumstances where the jury does not have to make a substantial inference to link the defendant to the statement, I believe that it is a "reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process," *Richardson v. Marsh, supra,* 107 S.Ct. at 1709, to provide an avenue of relief to a defendant who can demonstrate that because the codefendant's statement constitutes a vitally important piece of evidence against him, the consequences of the jury's failure to follow its instructions will, in all probability, result in actual and material prejudice to his case. *Cf. United States v. Cleveland, supra,* 590 F.2d at 28 (defendant must demonstrate significant degree of prejudice to overcome society's interest in conducting joint trials); *Catlett v. United States,* 545 A.2d 1202, 1212 (D.C.1988).[6]

I therefore conclude that admission of Washington's redacted statements did not violate Foster's right of confrontation. Although it is likely that, given the independent trial evidence, the jury did not have to make a substantial inference to connect Foster to those statements, the consequences of the jury's failure to follow its instructions would not have proved vital to Foster since the statements merely corrob-

orated the testimony of the government's witnesses and thus did not "add substantial, perhaps even critical, weight to the government's case." *Bruton, supra,* 391 U.S. at 127, 88 S.Ct. at 1623.

---

S.Ct. at 1627; *see Wapnick v. United States,* 406 F.2d 741 (2d Cir.1969).

Thus, adoption of the second prong of the *Gonzalez* test is consistent with the rationale of *Bruton* which "has always required trial judges to answer the question whether a particular confession is or is not 'powerfully incriminating' on a case-by-case basis." *Richardson v.*

*Marsh, supra,* 107 S.Ct. at 1710 (Stevens, J., dissenting).

**6.** I note that a confession may be vital to the government's case even though the independent evidence of guilt is sufficient to sustain a conviction of the defendant.